**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ASHLEY ALLEN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. _____ |
| JACKSONVILLE UNIVERSITY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Ashley Allen ("Plaintiff"), by and through undersigned counsel, brings this action against Defendant Jacksonville University ("Defendant" or the "University") on behalf of herself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this case as a result of Defendant's decision not to issue appropriate refunds for the Spring 2020 semester after canceling in-person classes and changing all classes to an online/remote format, closing most campus buildings, and requiring all students who could leave campus to leave as a result of the Novel Coronavirus Disease ("COVID-19").

2.      This decision deprived Plaintiff and the other members of the Classes from recognizing the benefits of on-campus enrollment, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3.      Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant failed to provide during the Spring 2020 semester, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members

of the Classes for their loss.

4.     This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a *pro-rata* basis, together with other damages as pled herein.

## PARTIES

1.     Plaintiff Ashley Allen is an individual and a resident and citizen the State of California, and was a student enrolled at Defendant Jacksonville University during the Spring 2020 term.

2.     Jacksonville University is an institution of higher learning located in Jacksonville, Florida.

3.     Upon information and belief, Defendant has an estimated endowment of approximately $44.7 million in 2018[1] and 4,164 students enrolled during the 2019-2020 academic year.[2]

4.     Moreover, Defendant reportedly was allocated more than $2.2 million of federal stimulus funds under the CARES Act.[3]  The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to the Class Action Fairness

---

[1]     "Jacksonville University," U.S. News & World Report, *available at* https://www.usnews.com/best-colleges/jacksonville-university-1495 (last accessed Aug. 17 2020).

[2]     "Fast Facts," Jacksonville University, *available at* https://www.ju.edu/about/fast-facts.php (last accessed Aug. 17 2020).

[3]     "CARES Act," Jacksonville Univeristy, *availavable at* https://www.ju.edu/financialservices/cares-act.php (last accessed Aug. 17, 2020).

Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendant because Defendant conducts business in Jacksonville, Florida and has sufficient minimum contacts with Jacksonville, Florida.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## BACKGROUND FACTS

8.      Plaintiff was enrolled as a full-time student for the Spring 2020 academic semester at Defendant's institution.

9.       As a precondition for enrollment, Plaintiff was required to and did pay substantial tuition for the Spring 2020 semester either out of pocket or by utilizing student loan financing, as did all members of the putative Tuition Class (defined below).

10.      There are hundreds, if not thousands, of institutions of higher learning in this country.

11.      Some institutions of higher learning provide curriculum and instruction that are offered on a remote basis through online programming which do not provide for physical attendance by the students.

12.      Defendant's institution offers both in-person, hands-on programs, and fully online distance-learning programs, which it markets and prices as separate and distinct products. In fact, Defendant only formally offers one online program in nursing.[4]

---

[4]      "Online RN BSN," Jacksonville University, *available at* https://www.ju.edu/nursing/undergraduate/online-rn-bsn.php (Last accessed Aug. 17, 2020).

13.     Plaintiff and members of the proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and specifically chose the on-campus program and enrolled on that basis.

14.     Defendant has recognized and admitted the inherent difference between its in-person and online products, and markets them separately throughout its website and other publications and circulars, including its academic catalogs.

15.     Accordingly, when students pay tuition in exchange for enrollment in the on-campus program, such students expect to receive, and Defendant has promised to provide, benefits and services above and beyond basic academic instruction, which include but are not limited to:

- Face-to-face interaction with professors, mentors, and peers;
- Access to facilities such as computer labs, study rooms, laboratories, libraries, etc.;
- Student governance and student unions;
- Extra-curricular activities, groups, intramurals, etc.;
- Student art, cultures, and other activities;
- Exposure to community members of diverse backgrounds, cultures, and schools of thought;
- Social development and independence;
- Hands-on learning and experimentation; and
- Networking and mentorship opportunities.

16.     Plaintiff's education was changed from in-person, hands-on learning to online instruction during the Spring 2020 term.

17.     Nonetheless, "[e]ach of Jacksonville University's 219 full-time professors is

committed to classroom teaching."[5] In fact, upon information and belief, Defendant offered only one undergraduate program online before the COVID-19 pandemic – in nursing.

18.     When classes were moved online, Plaintiff was forced from campus and deprived of the benefit of the bargain for which she had paid, and in exchange for which Defendant had accepted, tuition as set forth more fully above.

19.     In addition to tuition, Defendant charges certain mandatory fees for undergraduates, including but not limited to a:

- Student Success Fee;

- Student Wellness Fee;

- Book Bundle Fee;

- Student Health Insurance Fee;

- Meal Plan; and

- Residence Hall Fee.[6]

20.     Plaintiff was required to and did pay all mandatory fees associated with her Spring 2020 enrollment.

21.     In addition to the broad-based mandatory fees described above, Defendant charges a myriad of other program or course specific fees, including but not limited to:

- Admissions deposit;

- Residince Hall Room reservation;

---

[5]     "University Profile," Jacksonville University," *available at* http://ju.smartcatalogiq.com/en/2019-2020/2019-2020-Academic-Catalog/University-Profile (last accessed Aug. 17, 2020).

[6]     "Undergraduate Tuition and Costs," Jacksonville University, *available at* https://www.ju.edu/financialservices/tuition/undergraduate.php (last accessed Aug. 17, 2020).

- Residence Hall Damage Deposit;

- Orientation Fee;

- Online Orientation Fee;

- Applied Music Fees;

- Flight Training Fees;

- Payment Plan Fee;

- Post Office Box Replacement Fee;

- Lock & Kee Fee;

- Athletic Equipment Replacement Fee;

- Library Fines;

- J-Bike Lock Fee;

- Online Alcohol Course Fee;

- Parking Fines; and

- Lost ID Fee.[7]

22.     As a result of the actions and announcements of Defendant during the Spring 2020 term, Plaintiff and members of the Fees Class (defined below) no longer had the benefit of the services for which these fees were paid.  For example, student events and activities were cancelled, student organizations were no longer operational, and students who moved home no longer had the need for or access to the various health facilities.

23.     At Defendant's request and direction, certain Plaintiff and members of the Classes moved out of on-campus housing and lost access to any campus facilities and services thereon throughout the remainder of the Spring 2020 term.

---

[7]    Id.

24.    For example, Plaintiff moved out of on-campus housing on or before March 9, 2020 and was unable to return to campus for the remainder of the Spring 2020 term, and had no access to any campus facilities or services from that date.

## FACTUAL ALLEGATIONS

25.    Upon information and belief, Defendant's Spring term began with the first day of classes on or about January 6, 2020.[8]

26.    Upon information and belief, Defendant's Spring term was scheduled to conclude with the last day of examinations on or about April 24, 2020 and commencement ceremonies on April 25, 2020.[9]

27.    Accordingly, Defendant's Spring semester was scheduled and contracted to consist of approximately 109 days.

28.    However, as a result of the COVID-19 pandemic, Defendant announced on March 11, 2020 it was moving to a completely online format beginning March 16, 2020 that would last until April 3, 2020.[10]

29.    On March 17, 2020 Defendant announced it would be continuing online instruction for the remainder of the semester.[11]

30.    In this same communication, Defendant "strongly encouraged" students to move out of their residence halls.[12]

---

[8]    Jacksonville University, "2019-2020 Academic Catalog," at 14 *available at* https://www.ju.edu/academics/docs/2019-20_Academic_Catalog.pdf (last accessed Aug. 17, 2020).

[9]    Id.

[10] https://www.facebook.com/jacksonvilleuniversity/posts/2856903477733238?_tn_=K-R.
[11] https://www.facebook.com/jacksonvilleuniversity/posts/2870034393086833?_tn_=K-R.
[12] Id.

31.     Also, on March 17, 2020, Defendant began to close on-campus student facilities such as libraries and other buildings and non-essential offices.[13]

32.     Based on the dates set forth above, upon information and belief, Defendant's move to online classes and constructive eviction of students on March 17, 2020 deprived Plaintiff and other members of the Classes from access to campus facilities and in-person instruction for approximately 36% of the semester for which they had contracted.

33.     Although Defendant continued to offer some level of academic instruction via online classes, Plaintiff and members of the proposed Tuition Class were deprived of the benefits of on-campus enrollment for which they paid as set forth more fully above.

34.     These realities notwithstanding, Defendant has refused and continues to refuse to offer any refund whatsoever with respect to the tuition that has already been paid.

35.     Likewise, Plaintiff and members of the proposed Fees Class were deprived of utilizing services for which they have already paid, such as access to campus facilities, student activities, health services and other opportunities.

36.     Defendant has announced that it will be issuing full *pro-rata* refunds for room and board fees. Accordingly, this action does not seek to certify an On-Campus Housing Class or Meals Class for the recovery of those funds. However, Plaintiff reserves the right to amend these allegations should Defendant fail or refuse to issue these refunds as promised.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff incorporates by reference paragraphs 1 through 36 as though fully set forth herein.

---

[13] <u>Id.</u>

38.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

**The Tuition Class**:

All people who paid tuition for or on behalf of students enrolled in classes at the University for the Spring 2020 semester but were denied live, in-person instruction and forced to use online distance learning platforms for the latter portion of that semester.

**The Fees Class**:

All people who paid fees for or on behalf of students enrolled in classes at the University for the Spring 2020 semester.

**The Room and Board Class**:

All people who paid the costs of room and/or board for or on behalf of students enrolled in classes at the University for the Spring 2020 semester who moved out of their on-campus housing and/or could not access on-campus dining prior to the completion of the semester because of Defendant's policies and announcements related to COVID-19, and who were not refunded accordingly for their full pro-rata losses.

39.     Excluded from the Classes are Defendant Jacksonville University, and any of its respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

40.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

42.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiff is informed and believes that there are thousands of members of the Classes, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

43.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Classes, including, without limitation:

(a)     Whether Defendant engaged in the conduct alleged herein;

(b)     Whether there is a difference in value between enrollment in an online distance learning program and enrollment in a live, on-campus instructional program;

(c)     Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(d)     Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiff and the Tuition Class representing the difference between the value of online distance learning and on-campus, in-person enrollment;

(e)     Whether Defendant breached its contracts with Plaintiff and the other members of the Fees Class by retaining fees without providing the services,

benefits and/or programs the fees were contracted to cover;

(f)     Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the other members of the Fees Class without providing the services, benefits and/or programs the fees were intended to cover;

(g)     Whether Defendant breached its contracts with Plaintiff and the other members of the Room and Board Class by retaining costs for housing and food without providing those products and services for which the costs were paid;

(h)     Whether Defendant was unjustly enriched by retaining room and board costs of Plaintiff and the other members of the Room and Board Class without providing the products and services for which the costs were paid;

(i)     Whether Defendant violated the "Florida Deceptive and Unfair Trade Practices Act," ss. 501.201, et seq., Fla. Stat., as to Plaintiff and the other members of the Tuition Class;

(j)     Whether Defendant violated the "Florida Deceptive and Unfair Trade Practices Act," ss. 501.201, et seq., Fla. Stat., as to Plaintiff and the other members of the Fees Class;

(k)     Whether Defendant violated the "Florida Deceptive and Unfair Trade Practices Act," ss. 501.201, et seq., Fla. Stat., as to Plaintiff and the other members of the Room and Board Class;

(l)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(m)     Whether Class members are entitled to declaratory, equitable, or injunctive

relief, and/or other relief; and

(n)     The amount and nature of relief to be awarded to Plaintiff and the other

members of the Classes.

### Typicality: Fed. R. Civ. P. 23(a)(3)

44.     Plaintiff's claims are typical of the claims of other members of the Classes because, among other things, all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

45.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of other members of the Classes she seeks to represent. Plaintiff has retained counsel competent and experienced in complex litigation, and Plaintiff intends to prosecute the action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

46.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

47.     Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

48.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

### Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

49.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiff and Other Members of the Tuition Class)

50.     Plaintiff incorporates by reference all the allegations in paragraphs 1 through 49 as though fully set forth herein.

51.     Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

52.     Plaintiff and the other members of the Tuition Class entered into contracts with Defendant which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, Defendant would enroll such students and admit them to campus; granting them the full rights and privileges of student status, including but not limited to access to campus facilities, access to campus activities, and live, in-person instruction

in a physical classroom.

53.    The rights and privileges of student status that comprise the contractual terms are set forth by Defendant through its website, academic catalogs, student handbooks, correspondence, marketing materials and other circulars, bulletins, and publications.

54.    These rights and privileges form the basis of the bargain on which prospective students agree to accept Defendant's offer of enrollment in exchange for the payment of tuition and fees.

55.    One such right is the ability to be physically present on campus, and fully enjoy the facilities, services, and opportunities provided thereon, including the campus' location and surrounding opportunities within Jacksonville.

56.    In fact, such right to be physically on campus is required by Defendant for their first *three years*.[14]

## Living on campus is such an integral part of the Jacksonville University experience that we have a three-year residency requirement.

57.    Defendant does not deny that the physical location of its campus is a main benefit of enrollment that attracts many students to the University.

58.    Indeed, Defendant's connection to its location is indelibly enshrined in its official name, "Jacksonville University."

59.    Likewise, Defendant's connection to to the region is acknowledged in the

---

[14] https://www.ju.edu/residentiallife/campusliving/.

University Mission Statement, which states "As the oldest and largest private four-year university in northern Florida and southern Georgia, the University seeks to comprehensively serve an ethnically and geographically diverse, largely undergraduate student body in cutting-edge baccalaureate, master, doctorate, and professional certification programs."[15]

60.     Defendant's website and recruitment brochures are the primary means through which Defendant targets prospective new students and attempts to influence such students to apply for enrollment at the University as opposed to other institutions of higher learning.

61.     Through these publications, Defendant markets to and enrolls students in two separate and distinct products.

62.     Defendant specifically markets certain classes and degree programs as being offered on a fully online basis.

63.     Defendant's publications with respect to non-online classes are full of references to the on-campus experience, including numerous references to student activities; campus amenities; class size and student/teacher ratios; campus diversity, campus location, and the like.

64.     When prospective students enter the Defendant's home page, for instance, they are greeted with the following:

> Why Jacksonville? Our beautiful waterfront campus provides a nurturing environment and a highly customized education for every student.[16]
>
> For more than 80 years, Jacksonville University has offered active, hands-on undergraduate academics that encourage exploration and ingenuity. From aviation to kinesiology, biology to business, marine

---

[15]     Jacksonville University, "2019-2020 Academic Catalog," at 17, *available at* https://www.ju.edu/academics/docs/2019-20_Academic_Catalog.pdf (last accessed Aug. 17, 2020).

[16]     "Home," Jacksonville University, *available at* https://www.ju.edu/ (last accessed Aug. 17, 2020).

science to dance, you'll encounter challenging new concepts and generate exciting ideas both in and out of the classroom.[17]

65.     When prospective students enter Defendant's "About" page, they are told:

Jacksonville University is located in a beautiful riverfront setting in suburban Jacksonville, across the St. Johns River from downtown and just minutes from the Atlantic Ocean. The 240-acre campus includes a half-mile of riverfront, oak-lined paths, and a mix of historic and new campus buildings.[18]

The University's residential campus is home to a great variety of social, cultural, Greek, religious, performance and service organizations. The Kinne University Center and the new Davis Student Commons provide an array of facilities for students to enjoy campus life. Students live in residence halls and on-campus apartments.[19]

Jacksonville University has 21 Division I athletic teams. Nearly 1 in 4 JU students compete in an intercollegiate varsity sport. The athletic facilities include a ballpark overlooking the river, new tennis and softball complexes, plus a football, soccer, and track & field complex.[20]

66.     Defendant also touts the size and location of "[t]he Carl S. Swisher Library[,] a three-story, 52,000 square foot facility overlooking the St. Johns River and centrally located on the academic part of campus."[21]

---

[17]    Id.

[18]    "About Jacksonville University," Jacksonville University, *available at* https://www.ju.edu/about/index.php (last accessed Aug. 17, 2020).

[19]    Id.

[20]    Id.

[21]    "Carl S. Swisher Library," Jacksonville University, *available at* https://www.ju.edu/library/index.php (last accessed Aug. 17, 2020); see also, Jacksonville University, "2019-2020 Academic Catalog," at 22, *available at* *https://www.ju.edu/academics/docs/2019-20_Academic_Catalog.pdf* (last accessed Aug. 17, 2020).

67.     Defendant's "Admissions" page similarly boast its location, "Nestled across the waterway from downtown Jacksonville, you'll find Jacksonville University a caring, tight-knit, and student-centered campus where you'll never get lost in the crowd—and where even the president knows you by name. Take the plunge and find your pod in our vibrant and diverse community."[22]

68.     Further information aboiut Defendant's on-campus offerings can be found in the "Academic Catalog," for instance:

- Alexander Brest Dance Studio;[23]

- Art Research Cenrters;[24]

- Bartlett Kinne University Center;[25]

- Davis College of Business Building;[26]

- Davis Student Commons;[27]

- Founders and University Counsil Buildings;[28]

---

[22]     "Office of Admisssions," Jacksonville University, *available at* https://www.ju.edu/admissions/index.php (last accessed Aug. 17, 2020).

[23]     Jacksonville University, "2019-2020 Academic Catalog," at 21, *available at* *https://www.ju.edu/academics/docs/2019-20_Academic_Catalog.pdf* (last accessed Aug. 17, 2020).

[24]     Id.

[25]     Id.

[26]     Jacksonville University, "2019-2020 Academic Catalog," at 22, *available at* *https://www.ju.edu/academics/docs/2019-20_Academic_Catalog.pdf* (last accessed Aug. 17, 2020).

[27]     Id.

[28]     Id.

- Jacksonville University Downtown;[29]

- J. Henry Gooding Building;[30]

- Brooks Rehabilitation College of Healthcare Sciences;[31]

- Marine Science Research Institute;[32]

- Merritt C. Penticoff Science Building;[33]

- Nelms and Swisher Science Buildings;[34]

- Phillips Fine Arts Building and Alexander Brest Gallery;[35]

- Recreation Facilities;[36]

- Reid Medical Science Center;[37]

- The River House;[38]

- Student Residence Halls;[39]

---

[29]   Id., at 23.

[30]   Id.

[31]   Id.

[32]   Id.

[33]   Id., at 24.

[34]   Id.

[35]   Id.

[36]   Id.

[37]   Id.

[38]   Id.

[39]   Id.

- Swisher Theatre;[40]

- Terry Concert Hall;, and[41]

- Tillie K. Fowler NROTC Building.[42]

69.     Defendant also goes to great length to highlight its location in Jacksonville and

Northeast Florida:

> Metropolitan Jacksonville is northeast Florida's financial, commercial, industrial, and transportation center, as well as home to nearly one million people. In addition to a moderate winter and summer climate, Jacksonville offers many advantages to JU students. As a result of its dominant business orientation, Jacksonville offers a multitude of internship and work opportunities. JU is fortunate to have internship arrangements with many of the city's leading business and industrial organizations.

> In terms of cultural, entertainment, and recreational offerings, the city is home to the Jacksonville Symphony Orchestra (JSO), one of the oldest permanent symphony orchestras in the state, as well as the Florida Ballet and Theatre Jacksonville. A variety of national and internationally reknown entertainment can be found at the Florida Times-Union Center for the Performing Arts, the Florida Theater, and the Veteran's Memorial Coliseum. For art lovers, the Museum of Contemporary Art Jacksonville (MOCA), the Cummer Museum of Art and Gardens, the Museum of Science and History and the weekend Riverside Art Market offer a variety of attractions and exhibits.

> Outdoor activities can be found at such places as the Jacksonville Zoological Garden as well as the hundreds of parks through out the city. Jacksonville is home for the NFL's Jacksonville Jaguars, and the Jacksonville Jumbo Shrimp minor league baseball team. It was also home to the NFL's 2005 Super Bowl. Beautiful and sunny Atlantic Ocean beaches are just minutes from campus. The city also offers a myriad of golf courses and tennis facilities, as well as major PGA and ATP tournaments. Fishing, both fresh and saltwater, and water sport opportunities abound. Popular river walks on the south

---

[40]     Id.

[41]     Id., at 25.

[42]     Id.

and north banks of the St. Johns River in downtown Jacksonville attract residents and visitors alike.

Historical sites within an hour's drive of the JU campus mirror Florida's colonial heritage. The nation's oldest city, St. Augustine, is 40 miles south, and its imposing Castillo de San Marcos is a reminder of Florida's history under Spanish rule. Fort Clinch, near Fernandina Beach, is a Civil War-era military fortress built to defend the seaward approach to Cumberland Sound. The Fort Caroline Memorial, only moments north of the campus, is the remnant of an ill-fated French Huguenot settlement.[43]

70.     Defendant's "Campus Life" page also explains the value of its on-campus offerings:

College isn't just about class, and you're way more than just your academic interests. Campus life at JU reflects the many passions of our students with long-standing traditions, year-round events, fraternities, sororities, every kind of club you can think of, and 17 Division I NCAA teams. It's through these diverse activities—in addition to our stellar classes—that you'll build community, make friends, and construct a dynamic future that feels true to all that you are.[44]

71.     Defendant also promises an "Experiential Learning" program:

Where were you when you learned the greatest lessons of your life? We believe classroom learning is most effective when enhanced by doing. JU's Experiential Learning program ensures all students participate in research, study abroad, internships, or service, and Jacksonville is the ideal home base from which to explore these real-world options. So by the time you graduate you'll have the skills—not to mention the resume—to pursue your dream career.[45]

72.     Upon information and belief, there were no references or disclaimers in any of Defendant's websites, circulars, bulletins, publications, brochures, or other advertisements prior

---

[43]     Id., at 25.

[44]     "Campus Life," Jucksonville University, *available at* https://www.ju.edu/campuslife/index.php (last accessed Aug. 17, 2020).

[45]     "Academics," Jacksonville University, *available at* https://www.ju.edu/academics/index.php (last accessed Aug. 17, 2020).

to January 10, 2020, that even referenced the possibility of in-person classes being changed to fully online classes at Defendant's discretion or for any other reason whatsoever after the start of a given term.[46]

73.   In fact, it is clear that, prior to the COVID-19 interruption, Defendant had no plans whatsoever to offer its in-person classes via an online delivery model.

74.   Those prospective students who were interested in enrolling at the University after consuming the marketing materials described above were invited to complete applications, and some were selected for and offered admission.

75.   When a student is offered admission to the University, that student receives a number of further communications and has a number of additional interactions with Defendant.

76.   Upon information and belief, the student will receive an official offer letter with additional information and instructions how to accept the offer. .

77.   Upon information and belief, when students officially accept their offers, they are flooded with a number of other communications from the school.

78.   Before the start of their first semester, students are required to attend a mandatory new student orientation program on-campus.

79.   Upon information and belief, students attending orientation receive additional documents and information about the University.

80.   Once students make it through orientation [and for returning students], it comes time to register for classes. This is another area where Defendant specifically emphasizes the distinction between its in-person and online class offerings through the academic catalogs and

---

[46]   January 10, 2020 is the approximate date that students were permitted to withdraw from the University for the Spring 2020 term and receive a full tuition refund.

course listings on the website. In fact, before the COVID-19 pandemic, it appears Defendant only formally offered only one fully online program to undergraduates -- in nursing.

81.    According to Defendant's 2019-2020 Academic Catalog, "a semester or credit hour represents the successful completion of a minimum of one 1-hour session of *classroom instruction* per week for a semester of not less than fifteen weeks."[47]

82.    The course catalog further specifies:[48]

> "In order to compensate for the *loss of contact hours*, courses may either hold longer class times than the regular academic schedule, or add a component of course to equalize the workload with a traditional semester course. Courses taught in an non-traditional medium or with fewer than standard classroom hours must achieve the same learning outcomes as traditional class meeting for a standard 15-week semester."

83.    Each of Defendant's academic programs is listed separately on the University's student financial services website with the specific tuition and fees charged for the specific program.[49]

84.    Each online program is specifically delineated as such, with the in-person programs not so delineated.

85.    When students log on to the registration portal to select their in-person classes, each class is listed not only by description, but also by meeting time and physical classroom location.

86.    Upon registration, students in many of Defendant's on-campus schools and programs were subject to strict personal attendance requirements as set forth in various

---

[47] Ju.smartcatalogiq.com/2019-2020/2019-2020-Academic-Catalog/Academic-Information/Semester-Credit-Hours.

[48] Ju.smartcatalogiq.com/2019-2020/2019-2020-Academic-Catalog/Academic-Information/Semester-Credit-Hours.

[49] See, e.g., "Student Financial Services," *available at* https://www.ju.edu/financialservices/tuition/undergraduate.php; https://www.ju.edu/financialservices/tuition/adult.php (last accessed Aug. 17, 2020).

departmental policies and handbooks, evidencing Defendant's requirement and the student's acceptance of the requirement that such students physically attend such classes on campus.[50]

87.     That Defendant offered to provide, and members of the Tuition Class expected to receive, instruction on the physical campus is further evidenced by the parties' prior course of conduct.

88.     Those classes for which students expected to receive in-person instruction began the Spring 2020 semester by offering in-person instruction.

89.     Each day for the weeks and months leading up to March 16, 2020, students attended physical classrooms to receive in-person instruction, and Defendant provided such in-person instruction.

90.     Likewise, upon information and belief, most students were provided with syllabi and other documents that referenced class meeting schedules, locations, and physical attendance requirements.

91.     Each day for the weeks and months prior to announced closures, students had access to the full campus.

92.     Accordingly, it is clear that Defendant offered to provide live, in-person education, together with a full on-campus experience and that members of the Tuition Class accepted that offer by paying tuition and attending classes during the beginning of the Spring 2020 semester.

93.     Based on this mutual assent, Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

---

[50]     See, e.g., Jacksonville University, "2019-2020 Academic Catalog," at 115, *available at* https://www.ju.edu/academics/docs/2019-20_Academic_Catalog.pdf (last accessed Aug. 17, 2020).

94.     However, the University breached the contract with Plaintiff and other members of the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and restricting the on-campus experience without reducing or refunding tuition accordingly.

95.     This cause of action does not seek to allege "academic malpractice."

96.     Rather, it is clear from the facts and circumstances that Defendant offered two separate and distinct products, one being live, in-person, on-campus education, with its featured ancillary and related services, and the other being online distance education.

97.     Plaintiff and members of the Tuition Class accepted Defendant's offer for live in-person on-campus education and paid valuable consideration in exchange.

98.     However, after accepting such consideration from Plaintiff and other members of the Tuition Class, Defendant provided a materially different product, which deprived Plaintiff and other members of the Tuition Class of the benefit of the bargain for which they had already paid.

99.     Defendant retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

100.    Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach amounting to the difference in the fair market value of the services and access for which they contracted, and the services and access which they actually received.

101.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the live, in-person instruction in a physical

classroom on a physical campus with all the attendant benefits for which they contracted.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Tuition Class)**

102.    Plaintiff incorporates by reference all the allegations in paragraphs 1 through 101 as though fully set forth herein.

103.    Plaintiff brings this count on behalf of herself and other members of the Tuition Class.

104.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the First Cause of Action above.

105.    Plaintiff and other members of the Tuition Class paid substantial tuition for live, in-person instruction in physical classrooms on a physical campus with all the attendant benefits.

106.    Plaintiff and other members of the Tuition Class conferred a benefit on Defendant when they paid this tuition.

107.    Defendant has realized this benefit by accepting such payment.

108.    However, Plaintiff and other members of the Tuition Class did not receive the full benefit of their bargain.

109.    Instead, Plaintiff and other members of the Tuition Class conferred this benefit on Defendant in expectation of receiving one product, *i.e.*, live in-person instruction in a physical classroom along with the on-campus experience of campus life as described more fully above, but they were provided with a materially different product carrying a different fair market value, *i.e.*, online instruction devoid of the on-campus experience, access, and services.

110.    Defendant has retained this benefit, even though Defendant has failed to provide

the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

111.   As a result of closing campus and moving classes online, Defendant saved significant sums of money in the way of reduced utility costs, reduced maintenance and staffing requirements, reduced or eliminated hours for hourly employees, reduced or eliminated hours for paid work study students, and otherwise.

112.   Simply put, it is significantly cheaper to operate a remote, on-line campus than a fully open physical campus.  But even if it was not, it is not the product that students were offered and not the product the students expected to receive.

113.   Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

114.   This is particularly true where, as here, Defendant is supported by a $44.7 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

115.   At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $1.1 million for itself, as opposed to passing it along to students.

116.   This cause of action does not seek to allege "academic malpractice."

117.   Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A THIRD COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Plaintiff and Other Members of the Fees Class)**

118.    Plaintiff incorporates by reference all the allegations in paragraphs 1 through 117 as though fully set forth herein.

119.    Plaintiff brings this count on behalf of herself and other members of the Fees Class.

120.    In addition to tuition, Defendant charges a number of mandatory fees.

121.    In its publications and, particularly on its website, Defendant specifically describes the nature and purpose of each fee.

122.    Some fees apply broadly to all or certain groups of students, while other fees are program or course based.

123.    Such fees are set forth not only in amount but also in description and purpose through the various academic catalogs and on the website.

124.    As such, it is axiomatic that the monies Plaintiff and other members of the Fees Class paid towards these fees were intended by both the students and Defendant to cover the services, access, benefits and programs for which the fees were described and billed.

125.    As such, in accepting these terms and paying these fees, a contract was formed between Plaintiff, including the Fees Class, and Defendant, which provided that Plaintiff and other members of the Fees Class would pay these fees for or on behalf of themselves and, in exchange, Defendant would provide or make available the services, access, benefits and/or programs related to those fees, as promised.

126.    It is undisputed that Defendant did not provide student activities, on-campus printing facilities, access to recreational facilities, access to campus-based information technology resources, access to the library or other facilities for a portion of the Spring 2020 semester.

127.    Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester, either by paying out of pocket or by using student loan financing, or otherwise.

128.    However, Defendant breached the contract with Plaintiff and other members of the Fees Class by moving all classes for the Spring 2020 semester to online distance learning platforms, constructively evicting students from campus, closing most campus buildings and facilities, and cancelling most student activities.

129.    Although Defendant's admissions serve as a starting point for the analysis and support this cause of action, there are yet other fees that Defendant has refused and continues to refuse to refund.

130.    By retaining fees paid by Plaintiff and other members of the Fees Class, without providing them the full benefit of their bargain, Defendant has failed to perform its contractual obligations.

131.    Plaintiff and other members of the Fees Class have suffered damage as a direct and proximate result of Defendant's breach, namely being deprived of the value of the services, access, benefits and/or programs the fees were intended to cover.

132.    As a direct and proximate result of Defendant's breach, Plaintiff and other members of the Fees Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

## FOR A FOURTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT
## (Plaintiff and Other Members of the Fees Class)

133.    Plaintiff incorporate by reference all the allegations in paragraphs 1 through 132 as

though fully set forth herein.

134.    Plaintiff bring this count on behalf of herself and other members of the Fees Class.

135.    This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply, the contract-based claim set forth in the Third Cause of Action above.

136.    Defendant has received a benefit at the expense of Plaintiff and other members of the Fees Class to which it is not entitled.

137.    Plaintiff and other members of the Fees Class paid substantial student fees for on-campus services, access, benefits and/or programs and did not receive the full benefit of the bargain.

138.    Plaintiff and other members of the Fees Class conferred this benefit on Defendant when they paid the fees.

139.    Defendant realized this benefit by accepting such payment.

140.    Defendant has retained this benefit, even though Defendant has failed to provide the services, access, benefits and/or programs for which the fees were collected, making Defendant's retention unjust under the circumstances.

141.    Equity and good conscience require that Defendant return a portion of the monies paid in fees to Plaintiff and other members of the Fees Class.

142.    This is particularly true where, as here, Defendant is supported by a $44.7 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

143.    At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $1.1 million for itself, as opposed to passing it along to students.

144.    Defendant should be required to disgorge this unjust enrichment to the extent that Defendant has retained more than the fair market value for the product that Defendant was able to provide.

**FOR A FIFTH COLLECTIVE CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Plaintiff and Other Members of the Room and Board Class)**

145.    Plaintiff incorporates by reference paragraphs 1 through 144 above as though fully set forth herein.

146.    Certain Plaintiff brings this count on behalf of herself and other members of the Room and Board Class.

147.    Certain Plaintiff and the other members of the Room and Board Class entered into contracts with the University which provided that certain Plaintiff and other members of the Room and Board Class would pay certain fees for or on behalf of students and, in exchange, the University would provide on-campus housing and meals to those students.

148.    As part of this contract, the University was to provide housing and meals for a specified period of time, and students were to retain the right of quiet enjoyment in such housing so long as they complied with the University's student housing policies and procedures.

149.    Certain Plaintiff and other members of the Room and Board Class fulfilled their end of the bargain when they paid these fees for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

150.    The University breached the contract with Plaintiff and other members of the Room

and Board Class by moving all classes for the Spring 2020 semester to online distance learning platforms, and requiring students to move out of on-campus housing facilities and cancelling the offering of meals to students.

151.    The University retained fees paid by certain Plaintiff and other members of the On-Room and Board Class, without providing them the full benefit of their bargain.

152.    Certain Plaintiff and other members of the Room and Board Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the housing that the room fees were intended to cover, and the meals that the meal fees were intended to cover.

153.    As a direct and proximate result of Defendant's breach, Plaintiff and the other members of the Room and Board Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to disgorgement of the pro-rata amount of fees that were collected but for which services were not provided.

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION
## ENRICHMENT WITHOUT CAUSE
## (Plaintiff and Other Members of the Room and Board Class)

154.    Plaintiff incorporates by reference paragraphs 1-153 above as though fully set forth herein.

155.    Certain Plaintiff brings this count on behalf of herself and other members of the Room and Board Class.

156.    This claim is pled in the alternative to the contract-based claim set forth in the Fifth Cause of Action above to the extent it is determined a contract does not exist or otherwise apply.

157.    The University has received a benefit at the expense of Plaintiff and other members of the Room and Board Class to which it is not entitled.

158.     Certain Plaintiff and other members of the Room and Board Class paid substantial room fees for the right to occupy on-campus housing and receive meals and did not receive the full benefit of the bargain.

159.     Certain Plaintiff and other members of the On-Campus Housing and Meals Class conferred this benefit on Defendant when they paid the fees.

160.     Defendant has realized this benefit by accepting such payment.

161.     Defendant has retained this benefit, even though Defendant has failed to provide the meals, housing and other amenities for which the fees were collected, making Defendant's retention unjust under the circumstances.

162.     Equity and good conscience require that the University return a pro-rata portion of the monies paid in fees to Plaintiff and other members of the Room and Board Class.

163.     This is particularly true where, as here, Defendant is supported by a $44.7 million endowment, while its students on information and belief, do not have access to such immense financial resources, and further where, on information and belief, a substantial portion of its students have incurred substantial debt to finance an educational experience that they did not receive.

164.     At the same time, Defendant received significant aid from the federal government, of which Defendant has indicated that it intends to retain roughly $1.1 million for itself, as opposed to passing it along to students.

165.     Defendant should be required to disgorge this unjust enrichment.

## FOR A SEVENTH COLLECTIVE CAUSE OF ACTION
## VIOLATIONS OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(§§ 501.201, ET SEQ., FLA. STAT.)

### (Plaintiff and All Class Members)

166.    Plaintiff incorporates by reference all the allegations in paragraphs 1 through 165 as though fully set forth herein.

167.    Plaintiff brings this count on behalf of herself and all members of the other classes.

168.    Florida's "Deceptive and Unfair Trade Practices Act," §§ 501.201, et seq., Fla. Stat., provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." § 501.204(1), Fla. Stat.

169.    Defendant, through its agents, servants, and employees, engaged in unlawful, unfair, deceptive and fraudulent acts and practices in violation of "Deceptive and Unfair Trade Practices Act," §§ 501.201, et seq., Fla. Stat., by engaging in the activities described herein.

170.    Defendant is a private university which, among other things, offered in-person, hands-on curriculum to Plaintiff and other members of the Tuition Class.

171.    Plaintiff and other members of the Classes are consumers who have paid substantial tuition and fees to attend in-person, hands-on curriculum at Defendant's University for the Spring 2020 semester.

172.    Defendant's efforts to sell its services to prospective students, which included Plaintiff and other members of the Classes, were "consumer-oriented."

173.    As part of its marketing practices and recruitment efforts, as described above, Defendant made numerous statements, representations and omissions to the public (including Plaintiff and members of the Classes) with respect to the in-person educational opportunity and

on-campus experience that students who enrolled at the Defendant would receive. Such statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential students to enroll at the University for the Spring 2020 semester.

174.    With the reasonable expectation that students who enrolled at the University would receive in-person academic instruction with an on-campus experience for the entire 2020 Spring semester, Plaintiff and other members of the Classes paid tuition to Defendant.

175.    However, students did not receive an in-person academic instruction with on-campus experience, access and services for the entire 2020 Spring semester.  As a result, Plaintiff and other members of the Classes were proximately caused to pay inflated tuition because they were deprived of in-person academic instruction and an on-campus experience, access and services for the Spring 2020 semester.

176.    Therefore, the aforementioned statements, representations and omissions made by the University were objectively false, misleading and deceptive to Plaintiff and the other Class Members, as well as the public at large.

177.    Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and other members of the Classes because students enrolled for the Spring 2020 term did not benefit from on-campus academic instruction and a unique on-campus experience during the entire spring term.

178.    In fact, Plaintiff and other students were not permitted to receive and benefit from on-campus academic instruction and a unique on-campus experience during the entire Spring 2020 semester.

179.    Defendant's acts and practices were designed to lead potential students, and the public, to believe that if students enrolled at the University then they would be entitled to receive

in-class instruction and a unique campus experience for the entire Spring 2020 semester.

180.    Plaintiff and other members of the Classes were deceived and injured because students did not receive in-class instruction and a unique campus experience for the entire Spring 2020 semester.

181.    As a result of Defendant's foregoing violations of Florida's "Deceptive and Unfair Trade Practices Act," §§ 501.201, et seq., Fla. Stat., Defendants have directly and proximately caused damage to Plaintiff and other members of the Classes and are entitled to recover actual damages in an amount to be determined at trial, and an award of reasonable attorney's fees, expenses, costs and disbursements.

182.    Should Plaintiff prevail in this action, she is entitled to an award of her costs and reasonable attorneys' fees. § 502.2105(1), Fla. Stat.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, prays for judgment in their favor and against Defendant as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

C.    Declaring that Defendant has wrongfully kept monies paid for tuition, fees, and room and board;

D.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition fees, and room and board;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining

Defendant from retaining the pro-rated, unused monies paid for tuition, fees, and room and board;

F.       Scheduling a trial by jury in this action;

G.       Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

H.        Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law; and

I.       Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.


Dated: February 23, 2021                          **BURSOR & FISHER, P.A.**

                                                  By: _____*/s/ Sarah N. Westcot*_____
                                                          Sarah N. Westcot

                                                  Sarah N. Westcot (FBN: 1018272)
                                                  701 Brickell Avenue, Suite 1420
                                                  Miami, FL 33133
                                                  Telephone: (305) 330-5512
                                                  Email: swestcot@bursor.com

                                                  **BURSOR & FISHER, P.A.**
                                                  Joshua D. Arisohn*
                                                  888 Seventh Avenue
                                                  New York, NY 10019
                                                  Telephone: (646)837-7150
                                                  Email: jarisohn@bursor.com

                                                  **ANASTOPOULO LAW FIRM, LLC**
                                                  Roy T. Willey IV, Esq.*
                                                  Eric M. Poulin, Esq.*
                                                  32 Ann Street

Charleston, SC 29403
Telephone: (843) 614-8888
E-mail: roy@akimlawfirm.com
E-mail: eric@akimlawfirm.com

*Pro hac vice motion forthcoming*

*Attorneys for Plaintiff*