## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ASHLEY ALLEN, individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

JACKSONVILLE UNIVERSITY,

        Defendant.

_____/

Case No. 3:21-cv-178-MMH-JRK

### DEFENDANT'S SUPPLEMENTAL BRIEF ON FLA. STAT. § 768.39

Defendant, JACKSONVILLE UNIVERSITY ("Defendant" or "JU"), pursuant to the Court's Order [DE 34], respectfully submits its Supplemental Brief on Florida Statute § 768.39 in Support of [DE 11] Defendant's Motion to Dismiss.

### INTRODUCTION

Florida Statute section 768.39 (the "Act") is a remedial statute wherein the Legislature expressly found "an *overpowering public necessity* for, and *no reasonable alternative to* providing educational institutions with liability protections against lawsuits seeking tuition or fee reimbursements or related damages resulting from the institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency." The fact that the Act was enacted *after* Plaintiff filed this lawsuit is of no consequence. The remedial and procedural provisions of the Act presumptively apply to pending cases which have not been adjudicated. While the passage of the Act means that Plaintiff's  Complaint

1

[DE 6] is due to be dismissed, that result is not manifestly unjust as it does not violate any constitutional principles, or impair any vested rights or contractual obligations. JU respectfully requests that the Court dismiss this action with prejudice.

## I.     The Act Unequivocally Requires The Dismissal Of This Case

Florida Statute § 768.39 was enacted by the Legislature to provide liability protection to educational institutions from the specific harm presented by this lawsuit:

> The Legislature finds that *during the COVID-19 public health emergency*, educational institutions had little choice but to close or restrict access to their campuses in an effort to *protect the health of their students, educators, staff, and communities*.

> The Legislature further finds that *lawsuits against educational institutions* [which are] *based on their efforts to provide educational services while keeping students, faculty, and communities safe during the COVID-19 public health emergency are without legal precedent*. One court has even acknowledged that the "*legal system is now feeling COVID-19's havoc with the current wave of class action lawsuits that seek tuition reimbursement related to forced online tutelage*."

> *Under these circumstances*, the Legislature finds that there is an *overpowering public necessity for*, and *no reasonable alternative to*, providing educational institutions with liability protections against lawsuits seeking tuition for fee reimbursements or related damages resulting from the institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency.

Fla. Stat. § 768.39(1) (emphasis added). The only reasonable reading of the Act is that it directly disposes of Plaintiff's claims in this case.

### A.     JU Is Protected Against Liability For Plaintiff's Claims

As a nonpublic postsecondary institution, JU is an "educational institution," as defined by the Act. *Id.*; [DE 6 at ¶ 5]. Pursuant to § 768.39(3)(a), "[a]n educational institution that has taken reasonably necessary actions in compliance with federal, state, or local guidance to diminish the impact or the spread of COVID-19 may not be

held liable for, and shall be immune from, any civil damages, equitable relief, or other remedies relating to such actions." Reasonably necessary actions taken "while a state of emergency was declared for the COVID-19 pandemic include, but are not limited to, any of the following: 1. Shifting in-person instruction to online or remote instruction for any period of time; 2. Closing or modifying the provisions of facilities, other than housing or dining facilities, on the campus of the educational institution; or 3. Pausing or modifying ancillary student activities and services available through the educational institution." Fla. Stat. § 768.39(a)(1)-(3). Plaintiff's Complaint [DE 6] alleges breach of contract, and claims of unjust enrichment and alleged violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq. ("FDUPTA") that are based precisely on JU's "reasonably necessary actions". JU's actions were in compliance with federal, state, and local guidance, as well as Executive Order No. 2020-005 issued by Jacksonville Mayor Curry. [DE 11 at p.4]. Thus, Plaintiff seeks to hold JU liable for its "reasonably necessary actions" in response to the COVID-19 pandemic, and the Act thus clearly provides a basis for dismissal of the Complaint, with prejudice.

   **B.   The Act's Exceptions Do Not Apply**

   The Act is narrowly tailored to remedy the specific harm and issues found by the Legislature, but the liability protections are not without limits. Specifically, the Act excludes actions for damages resulting from the (a) ***breach of express contractual obligations allocating liability***, and/or (b) ***damages caused by an act or omission that was in bad faith or malicious***. Fla. Stat. § 768.39(5)(a)-(b). However, there are no allegations

3

in the Complaint supporting either of these exceptions. *See* [DE 6]. To be certain, even if Plaintiff tries to argue that she is alleging a breach of express contract claim (as opposed to implied in-fact), the documents and materials that she relies on do not contain any express obligation allocating liability. Nor does Plaintiff allege any facts that show an act or omission that was malicious or an act of bad faith. So, while the Act does not close the door to all claims, Plaintiff's allegations do not avail her of the statutory exceptions.

## II.   The Act's Remaining Remedial And Procedural Provisions Require Dismissal of Plaintiff's Claims

Beyond the liability protection of subsection (3)(a), the Act's remedial and procedural provisions further necessitate dismissal of Plaintiff's breach of contract, unjust enrichment, and FDUPTA claims. Importantly, neither of these provisions create or alter any elements, impose new legal burdens, or impart new legal rights which did not exist, or were different prior to enactment. Subsection 3(b) of the Act holds that the "***provision of in-person or on-campus education and related services is deemed to have been impossible…during any period of time in which [educational institutions] took reasonably necessary actions described in paragraph (a) to protect students, staff, and educators in response to the COVID-19 public health emergency***." Impossibility of performance is a well-established defense to breach of contract claims, the existence of which is undeniable in this case. *See* [DE 11, 31]; *Mailloux v. Briella*, 3 So.3d 394, 396 (Fla. 4th DCA 2009) ("In Florida, acts of God, impossibility of performance, and

4

frustration of purpose are well-recognized defenses to non-performance of a contract.").

Similarly, subsection (3)(c) is dispositive of Plaintiff's unjust enrichment and FDUTPA claims. Fla. Stat. § 768.39(3)(c) ("*As a result of the various governmental orders and the need for educational institutions to protect their communities, the reasonably necessary actions described in paragraph (a) are deemed justified*."). To prove unjust enrichment, Plaintiff must show, in pertinent part, that the circumstances are such that it would be inequitable for JU to retain the purported benefit without paying for it. *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997) (en banc). Stated differently, Plaintiff can only recover based on JU's reasonably necessary actions if its actions were not justified, and it would be inequitable to allow JU to keep the "benefit." In addition the fact that Plaintiff left campus prior to any communication from JU and never tried to return for any in-person instruction, yet still received instruction and academic credit in all of her registered courses, § 768.39(3)(c) clearly provides that it would not be "unjust" for JU to retain the full amount of tuition Plaintiff paid under the circumstances.

Similarly, FDUPTA seeks to protect the consuming public from those who engage in "unconscionable, deceptive, or unfair acts or practices…" Fla. Stat. § 501.202(2). Plaintiff can only recover under FDUTPA if JU's "reasonably necessary actions" were "unconscionable, deceptive, or unfair acts or practices," which Plaintiff has failed to allege. As set forth above, if JU's reasonably necessary actions were justified, they certainly could not be "unfair", "deceptive", or "fraudulent."

Regardless of whether alleged as breach of contract, unjust enrichment, or a violation of FDUPTA, the dispositive implications of Sections (3)(a), (3)(b), and (3)(c) are undeniable given the Legislature's explicit intent and direction that the Act's protections **must** "be provided to the **fullest extent authorized by law to any other types of claims or causes of action**." Fla. Stat. § 768.39(7) (emphasis added).

### III.   The Act Should Apply Retroactively Because it is Remedial

"A court ordinarily will apply the law in effect at the time it renders its decision." *See Tallahassee Mem. Regional Med. v. Bowen*, 815 F.2d 1435, 1454 (11th Cir. 1987). This is true even where the law was enacted after the events that gave rise to the suit, or when a lawsuit is already pending. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994); *Love v. State*, 286 So.3d 177, 187 (Fla. 2019) ("This Court has echoed on multiple occasions *Landgraf's* notion of a retrospective law.") While there is a presumption that a substantive statute operates prospectively rather than retrospectively, there is no presumption of prospective application where a statute is remedial, or relates to remedies or modes of procedure. *Love*, 286 So.3d at 187; *Smiley v. State*, 966 So.2d 330, 334 (Fla. 2007). "When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."[1] *Landgraf*, 511 U.S. at 273. (emphasis added). "[W]henever possible, such

---

[1] "The term 'retroactive' is used in most court cases to refer to application of a law or decision to conduct occurring prior to passage of the law or issuance of the decision. Some courts and commentators differentiate between "retroactive" and "retrospective" application – the former referring to application of a new law or case to matured rights, e.g., to a case that has gone to final judgment, and the latter referring to supplication of a new law or case to pending controversies." *Joyner*

[remedial] legislation should be applied to pending cases in order to fully effectuate the legislation's intended purpose." *Id.* (quoting *Arrow Air*, 645 So.2d at 424); *Glass v. Captain Katanna's Inc.*, 905 F.Supp.2d 1235, 1244 (M.D. Fla. 2013) ("'where a statute is remedial in nature, it should be liberally construed to 'preserve and promote access to the remedy intended by the Legislature.'"). Indeed, "courts are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.'" *Id.* at 1243, n. 16 (quoting *Bennett v. St. Vincent's Med. Ctr., Inc.*, 71 So.3d 828, 839 (Fla. 2011) (prohibiting statutory "readings that would render a part of a statute meaningless," and instructing that courts "must give full effect to all statutory provisions")). Here, the unambiguous text of the Act qualifies § 768.39 as a remedial statute.

## A.    The Act Is A Remedial Statute

Without limitation, courts have generally described a remedial statute as being designed to: (i) correct, clarify, or validate; (ii) redress an existing grievance, problem, or injury; (iii) introduce provisions conducive to the public good; (iv) confer or changes a remedy; (v) respond to emergencies; (vi) correct mistakes; and/or, (vii) prevent circumvention, abuse, or misuse of laws. *See Landgraf*, 551 U.S. 244; see also *Royale Green Condo Ass'n v. Aspen Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 118003, at *8 (S.D. Fla. Jul. 28, 2008); *Maronda Homes, Inc. v. Lakeview Reserve Homeowners Ass'n, Inc.*, 127 So. 3d 1258, 1272 (Fla. 2013); *Home Bldg. & Loan Asso. v. Blaisdell*, 290 U.S. 398 (1934);

---

*v. Monier Roof Tile, Inc.*, 784 F. Supp. 872, 875 n. 3 (S.D. Fla. 1992). For ease of reference, the use of the terms retrospective and retroactive in this brief refer to the latter category.

*Metro. Dade Cty.*, 737 So.2d at 503 (citations omitted); *Birnholz v. 44 Wall Street Fund, Inc.*, 880 F.2d 335, 338 (11th Cir. 1989) ("a remedy is the means employed by enforcing a right or in redressing an injury.") (quoting *St. John's Village I, Ltd. v. Dept. of State*, 497 So.2d 990, 993 (Fla. 5th DCA 1986)).

The Act is designed to redress an existing grievance and introduce legislation conducive to the public good, by "providing educational institutions with liability protections [*i.e.* remedies] against lawsuits seeking tuition or fee reimbursements or related damages resulting from the institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency." Fla. Stat. § 768.39(1). More specifically, subsections (3)(a), (3)(b), and (3)(c) are remedial because they confer remedies and otherwise operate to further remedies and/or confirm rights already in existence. *See id.* § 768.39(3)(a) (providing a remedy for educational institutions to employ against lawsuits for recovery of tuition and fees based on those institutions' "reasonably necessary" actions in response to the COVID-19 pandemic), (3)(b)-(c) (codifying common law defenses of impossibility and justification in context of claims arising from educational institutions failure to provide in-person education and related services during COVID-19 public health emergency).

The Act is curative in terms of existing law, but also in responding to the COVID-19 public health emergency and the interpretation of existing law. It was passed mere months after the district court opinion in *Salerno* and the beginning of the

wave of "unprecedented" lawsuits against educational institutions in Florida.[2]  Given the short lapse in time between the events giving rise to the grievances and the Legislature's swift action to correct and redress same, the Act, and its remedial provisions, should be interpreted as the Legislature's intent to clarify Florida law on the subject of educational institution obligations for in-person instruction and related services. *Metro. Dade Cty.*, 737 So.2d at 503 (citations omitted) (opining that amendment passed five months after the Third District Court of Appeal's opinion was "a legislative interpretation of the original law and not as a substantive change thereof" and "can be reasonably read as clarifying the legislative intent that the immunity provisions of the Act be construed in favor of real property owners.").

Moreover, the Act simply confirms and clarifies that the actions taken by educational institutions in response to COVID-19 and the various federal, state, and local orders reflect the public policy and State interest at that time. "The Legislature has the final word on declarations of public, and the courts are bound to give great weight to legislative determinations of facts." *University of Miami v. Echarte*, 618 So. 2d 196 (Fla. 1993) (cite omitted). "[L]egislative determinations of public purpose and facts are presumed correct and entitled to deference, unless clearly erroneous." *Id*. There has not been, and cannot be, any showing that the Legislature's findings "in this instant case are clearly erroneous" and, therefore, the Court should hold that the

---

[2] In fact, the Legislature cited *Salerno v. Florida S. Coll.*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020) in its analyses of the Act.  *See* CS/HB 1261, Analysis, Fla. House of Rep. (June 30, 2021, Jul. 6, 2021), available at: https://www.flsenate.gov/Session/Bill/2021/1261/Analyses/h1261d.EEC.PDF and https://www.flsenate.gov/Session/Bill/2021/1261/Analyses/h1261z1.PEL.PDF.

Legislature "has shown an 'overpowering public necessity' exists" and "no alternative method" for meeting the public necessity. *Id.* at 197.

### B.    The Act's Other Provisions Are Procedural

A "[p]rocedural law concerns the means and methods to apply and enforce . . . duties and rights." *Shaps v. Provident Life & Acc. Ins. Co.*, 826 So. 2d 250, 254 (Fla. 2002). Statutory provisions concerning admission of evidence and burdens of proof are procedural. *See Love*, 286 So.3d 177, 187; *Bunin v. Matrixx Initiatives, Inc.*, 197 So. 3d 1109, 1110 (Fla. 4th DCA 2016); *Kenz v. Miami-Dade Cnty.*, 116 So.3d 461, 465 (Fla. 3d DCA 2013) (collecting cases).[3]

Accordingly, §768.39(4) is a procedural provision of the Act that is due to be applied without concerns regarding retroactive application. S*ee Bunin*, *supra*, 197 So. 3d at 1110; *Perez v. Bell South Telecommunications, Inc.*, 138 So. 3d 492, 498 (Fla. 3d DCA 2014) (new *Daubert* standard "indisputably applies retroactively" because statutes relating to admission of evidence are procedural) (cite omitted); *City of Clermont v. Rumph*, 450 So. 2d 573, 576 (Fla. 1st DCA 1984) (requiring additional evidence for causation element of workers' compensation claim was procedural).

Subsection (4) of the Act is also directly related to the Act's remedial purpose, based on the Legislature's findings that this lawsuit, and the "wave" of class-action

---

[3] In *Kenz*, the court considered whether a law enacted after the plaintiff initiated the case, but before trial, applied retrospectively. *Id.* The appellate court affirmed the trial court's determination that the law applied retrospectively because it was a procedural change in the law. Notably, the plaintiff's argument that the law was substantive was rejected because the intervening law did not change any element of the plaintiff's claim, and did not otherwise eliminate the accrued cause of action. *Id.* at 466. Similar to the Act at issue in this case, the law "concern[ed] evidence, the burden of producing which is upon the plaintiff, that the jury must consider in determine whether there was a breach of duty" *Id.*

lawsuits like it which seek to use generalized, immaterial, and unenforceable statements and descriptions in marketing materials and course catalogs to "infer" a contractual promise for in-person education and services during a declared public health emergency are without "legal precedent". *See* Fla. Stat. § 768.39(1); *supra*. Despite being purely procedural, the evidentiary provision of subsection (4) is not a change in existing law; nor does it divest Plaintiff of any right to otherwise rely on those materials. Plaintiff's contract claims are predicated exclusively on alleged (but non-existent) "promises" to provide in-person instruction in JU's Academic Catalog, ambiguous references to generalized statements on JU's website, and mere conclusory references to JU's handbook, invoices, and other "publications." *See* [DE 6], [DE 11, 31]. To redress these "unprecedented" claims and theories, the Act expressly provides that in an action against an educational institution "for the reimbursement of tuition or fees, ***invoices, catalogs, and general publications of an education institution are not evidence of an express or implied contract to provide in-person or on-campus education and related services or access to facilities during the COVID-19 public health emergency.***"  Fla. Stat. § 768.39(4) (emphasis added). Accordingly, Plaintiff cannot allege, or sustain, her claims based on these materials. As she does not attempt to allege the existence of a contract or enforceable promise by, or through, any other source, her claims fail and must be dismissed.

Subsection (7) of the Act concerns the burden of proof that applies in an action involving an educational institution's compliance with a federal, state, or local order or a state agency directive "to alter the mode of deliver of instruction and related

services or access to facilities." Fla. Stat. § 768.39(7). This provision is purely procedural. Consequently, even to the extent § 768.39(7) amounts to an "increase" of a burden of proof, this provision still does not amount to a substantive change or impairment of any vested right. *Kenz*, *supra* at 465 (citing *Stuart L. Stein, P.A. v. Miller Indus., Inc.,* 564 So.2d 539, 540 (Fla. 4th DCA 1990) ("increasing the burden of proof to a 'clear and convincing' standard did not amount to a substantive change in the statutory scheme" and therefore, applied retroactively)). Thus, because Subsection (7) of the Act is procedural in nature, this Court may apply the Act retroactively to dispose of Plaintiff's claims in their entirety.

### C. Even If Portions Are Construed As Substantive, The Act Still Applies

Even if a new statute is substantive in nature, it can still apply retrospectively. In Florida, courts conduct a two-part analysis to determine whether a substantive law can be applied to a pending case, or to events occurring prior to the law's enactment. "First, the Court must ascertain whether the Legislature intended for the statute to apply [retrospectively]. Second, if such an intent is clearly expressed, the Court must determine whether [retrospective] application would violate any constitutional principles." *Menendez v. Progressive Exp. Ins. Co., Inc.*, 35 So. 3d 873, 877 (Fla. 2010).

#### 1. The Legislature Intended for the Act to Apply Retroactively

Where a statute, like the Act, expresses the Legislature's clear intent for the law to apply retrospectively, courts are "assure[d] that the legislature itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Metro. Dade County*, 737

So.3d at 500 (quote and alterations omitted).[4] As demonstrated above, the Legislature intended for the Act to apply to this case because: (a) they could have, but did not prohibit it from applying retroactively; and (b) retroactive application is the only way for the Act to have any meaning or effect since it expressly seeks to redress particular events and claims that arose prior to enactment (spring 2020 pivot to virtual instruction). Thus, the question becomes whether the Act's application in this case would violate constitutional principles. Discussed below, the answer is no, it does not.

### 2.  The Act Does Not Violate Constitutional Principles

In Florida, courts presume that all legislative acts are constitutional. *See Lawnwood v. Seeger*, 990 So. 2d 503, 508 (Fla. 2008) ("We do not take lightly a contention that a statute passed by the Legislature is unconstitutional and we start with the well-established principle that a legislative enactment is presumed to be constitutional."). "[T]he burden rests with the party challenging the law to show that is invalid." *Campus Comm. v. Earnhardt*, 821 So.2d 388, 392 (Fla. 5th DCA 2002) (quotes and citation omitted). Moreover, under Florida law, courts are "bound to resolve all doubts as to the validity of the statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." *Caple v. Tuttle's Design-Build*, 735 So.2d 49, 51 (Fla. 2000) (quote and citation omitted). However, JU notes that a constitutional analysis is unnecessary given the existence of several dispositive

---

[4] The legislative intent requirement "allocates to [the Legislature] responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate." *Landgraf*, 511 U.S. at 272-73.

grounds that exist in this case. *See Vazzo v. City of Tampa*, 415 F. Supp. 3d 1087, 1090 (M.D. Fla. 2019) ("The Eleventh Circuit follows 'the longstanding principle that federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided.'").

"Retroactive application of a civil statute ordinarily transgresses constitutional limitations on legislative power 'if the statute impairs vested rights, creates new obligations, or imposes new penalties.'" *See R.A.M. of South Florida, Inc. v. WCI Communities, Inc.*, 869 So. 2d 1210, 1217 (Fla. 2d DCA 2004) (citation omitted). A vested right is defined as "an immediate, fixed, right of present or future enjoyment" as well as "an immediate right of present enjoyment, or a present, fixed right of future enjoyment." *Id.* at 1218 (quotes omitted). "[T]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand[.]" *Id.* (quote omitted).

Plaintiff has no vested right in her alleged contract claims because, prior to COVID-19, no court has <u>ever</u> held that a contract, express or implied, exclusively for in-person education (or any other method or modality of instruction) existed, let alone was enforceable, especially during a declared public health emergency. Moreover, as demonstrated in JU's Motion to Dismiss, Plaintiff has not sufficiently alleged the existence of a valid/enforceable contract, that JU breached said contract, or that she suffered any damages. [DE 11]. Notwithstanding, even if there was a valid vested right to a contract in this case, an impairment of a contract is constitutionally permitted in

certain circumstances, especially those presented in this case. To determine this issue, courts balance "the actual effect of the provision on the contract and […] a party's interest in not having the contract impaired against the State's source of authority and the evil sought to be remedied." *Scott v. Williams*, 107 So.3d 379 , 385 (Fla. 2013); *Pomponio v. Claridge of Pompano Condominium*, 378 So. 2d 774, 780 (Fla. 1980) (same). "[A]n impairment may be constitutional if it is reasonable and necessary to serve an important public purpose." *Id*.

The Supreme Court's well-reasoned analysis in *Home Bldg. L. Assn. v. Blaisdell*, 290 U.S. 398 (1934) is instructive.[5]   In *Blaisdell*, the Court upheld a Minnesota mortgage moratorium statute enacted to provide relief for homeowners threatened with foreclosure. Although the law directly affected lenders' foreclosure rights under their mortgages with borrowers, the Court held the law did not violate the contract clause, because "the State . . . continues to possess authority to safeguard the vital interests of its people." *Id*. at 434. The Court explained:

> Not only are existing laws read into contracts in order to fix obligations as between the parties, but ***the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order***. The policy of protecting contracts against impairment presupposed the maintenance of a government by virtue of which contractual relations are worth while — a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.

---

[5] The Florida Supreme Court has described *Blaisdell* as "the most important case in the history of contract clause interpretation." *Pomponio*, *supra*, 378 So.2d at 776.

*Id.* (emphasis added). To that end, "[t]he States retain adequate power **to protect the public health** against the maintenance of nuisances despite insistence upon existing contracts." *Id.* at 436 (emphasis added) (citations omitted); *see id.* ("Legislation to protect the public safety comes within the same category of reserved power."); *id.* at 439-40 ("And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake [or infectious disease], that power cannot be said to be non-existent when the urgent public need demanding such relief is produced by other and economic causes."). Accordingly, the question is "not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the [Act] is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end." *Pomponio*, *supra*, 378 So.2d at 777. Common sense in this case indicates an answer in the affirmative. The Act obviously serves a legitimate end. *Supra*.[6]

To be certain, this District has previously held that local orders which seek to protect the health safety of its people is a legitimate government interest. *See Oakes v. Collier Cnty.,* Case No: 2:20-cv-568-FtM-38NPM, at *6 (M.D. Fla. Jan. 27, 2021). The underlying federal, state, and local orders referenced in the Act were issued under executive emergency powers; as such, the Act is rationally related to legitimate

---

[6] Importantly, *Blaisdell* also reiterates the distinction between an obligation (i.e. the provisioning of a particular modality of academic instruction) and a remedy (i.e. a refund): "The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." *Id.* at 429 (quotations and cite omitted) (emphasis added).

governmental interests and, therefore, does not offend constitutional rights. *Id*. at \*5 ("Federal courts do not overturn state legislative action 'unless the varying treatment of groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.'" (quoting *Jones v. Gov. of Fla.*, 950 F.3d 795, 809 (11th Cir. 2020)). "[I]t is not [a court's] function to review the decisions of elected officials to decide if they were wise or best fit to solve a problem." *Id*. at \*13-14 (citations omitted). "This is particularly true for legislative health responses to a pandemic, when latitude must be especially broad." *Id*. (internal quotes and cite omitted). As a result, even if it is deemed to be substantive in nature, because the Act does not violate constitutional principles, it applies to dispose of Plaintiff's claims in this lawsuit.

## CONCLUSION

For the reasons set forth herein and in Defendant's Motion to Dismiss [DE 11], Defendant respectfully requests that this Court dismiss Plaintiff's Complaint, with prejudice, and for other further relief as this Court may see fit.

DATED:      August 11, 2021

Respectfully submitted,

JACKSON LEWIS PC

By: */s/ Todd R. Dobry*
B. Tyler White, FBN: 0038213
Tyler.White@jacksonlewis.com
Todd R. Dobry, FBN: 109081
Todd.Dobry@jacksonlewis.com
501 Riverside Avenue, Suite 902
Jacksonville, FL  32202
Tele:  904-638-2655

and

NELSON MULLINS

Paul M. Renner, FBN: 40304
Paul.Renner@nelsonmullins.com
Shaina Stahl, FBN: 77643
Shaina.Stahl@nelsonmullins.com
Lee D. Wedekind, III, FBN: 670588
Lee.Wedekind@nelsonmullins.com
390 N. Orange Ave., Suite 1400
Orlando, FL 32801-1687
Tele:  407-839-4200
Fax:   406-425-8377

*Counsel for Jacksonville University*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 11th day of August, 2021, a true and correct copy of the foregoing has been filed via CM/ECF and served via electronic mail to the following counsel of record:

Eric M. Poulin
Anastopoulo Law Firm, LLC
32 Ann Street
Charleston, SC 29403
eric@akimlawfirm.com

Sarah Westcot
Bursor & Fisher, P.A.
701 Brickell Avenue.,
Suite 1420
Miami, FL 33133
swestcot@bursor.com

Joshua D. Arisohn
Bursor & Fisher, PA
888 Seventh Ave
New York, NY 10106
jarisohn@bursor.com

Roy T. Willey , IV
Anastopoulo Law Firm, LLC
32 Ann Street
Charleston, SC 29403
roy@akimlawfirm.com

By:   */s/ Todd R. Dobry*
Attorney