### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ASHLEY ALLEN,

        Plaintiff,

v.                                      Case No. 3:21-cv-178-MMH-LLL

JACKSONVILLE UNIVERSITY,

        Defendant.

_____

## ORDER

**THIS CAUSE** is before the Court on Defendant Jacksonville University's (JU) Motion to Dismiss Plaintiff's Corrected Class Action Complaint, (Doc. 11; Motion), and Defendant's Supplemental Brief on Fla. Stat. § 768.39. (Doc. 36; JU's Supp'l Brief). Plaintiff Ashley Allen filed Plaintiff's Opposition to Motion to Dismiss Plaintiff's Corrected Class Action Complaint on June 4, 2021, (Doc. 21; Response), to which JU filed a Reply on June 12, 2021. (Doc. 31; Reply). On August 25, 2021 Allen also filed Plaintiff's Supplemental Brief on Florida Statute § 768.39, (Doc. 38; Allen's Supp'l Brief), to which JU filed its Reply on September 27, 2021. (Doc. 43; JU's Supp'l Reply).

## BACKGROUND

In early 2020, the COVID-19 pandemic upended 21st century life. As infection rates climbed to alarming numbers, JU—a private university—made

several policy changes. On March 11, the school moved classes online. See Corrected Class Action Complaint (Doc. 6; Complaint) ¶ 28. Days later, JU closed campus facilities and encouraged students to leave their residence halls and return home. Id. ¶¶ 30–31. These changes remained in place for the duration of the semester. Id. ¶¶ 23, 29.

Plaintiff Ashley Allen was a student at JU during the spring 2020 semester. Id. ¶ 1. On February 23, 2021, Allen, on behalf of herself and seeking to represent similarly situated students, sued the school, alleging that JU's response to COVID-19 violated various contracts that existed between the two. (Doc. 1 ¶¶ 94, 128, 150). In her Complaint, Allen asserts that JU, in exchange for tuition and fee payments, promised to provide in-person instruction, access to on-campus facilities, and housing. See Complaint ¶¶ 92–93, 125, 147. According to Allen, JU breached these contracts when it moved classes online, closed the campus, cancelled student activities, and encouraged students to leave the residence halls. Id. ¶¶ 94 (Count I), ¶ 128 (Count III), ¶ 150 (Count V). As an alternative to each breach of contract claim, Allen brings a claim for unjust enrichment. Id. ¶¶ 104–105 (Count II), ¶¶ 135–36 (Count IV), ¶¶ 156–57 (Count VI). She also brings one count alleging a violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). Id. ¶¶ 168–81 (Count VII).

Pending before the Court is JU's Motion seeking dismissal of Allen's Complaint for failure to state a claim under Rule 12(b)(6), Federal Rule(s) of Civil Procedure. <u>See generally</u> Motion. After JU filed the Motion, the Florida legislature enacted Florida Statute section 768.39. The statute immunizes educational institutions from COVID-19 related lawsuits that seek tuition and fee reimbursements. Fla. Stat. § 768.39(1). In JU's Supplemental Brief, JU contends that section 768.39 requires dismissal of the Complaint. <u>See</u> JU's Supp'l Brief at 1–6. In doing so, JU argues that the statute can be applied retroactively because it is merely remedial and procedural, and alternatively, because the legislature intended it to apply retroactively and doing so violates no constitutional principle. <u>Id.</u> at 6–17. Allen disagrees. <u>See generally</u> Allen's Supp'l Brief. Indeed, Allen raises a number of constitutional challenges to the retroactive application of Florida Statute section 768.39 to defeat her claims. <u>Id.</u> Despite raising these constitutional challenges, Allen did not file a notice of the constitutional questions, nor did she serve notice of her challenges on Florida's Attorney General, as required by Rules 5.1(a)(1)(B), (2), Federal Rules of Civil Procedure. After the Court brought this failure to Allen's attention, she filed a notice on March 25, 2022, advising that she had now provided the required notice. (Doc. 54).[1] In accordance with 28 U.S.C. §

---

[1] Allen did not actually comply with Rule 5.1(a) because she did not file the required notice. Nor did she make any effort to explain the reason for her failure. Indeed, the Court still cannot determine whether Allen gave proper notice to the Florida Attorney General because Allen failed to provide the Court with a copy of the documents she sent such that the

2403(b)[2] the Court then certified the constitutional questions to the Florida Attorney General and also stayed the case to allow her to determine whether to intervene in the case. (Doc. 55). The Florida Attorney General declined to respond. Accordingly both the arguments in the Motion and JU's contention that that Florida Statute section 768.39 requires dismissal of this action are ripe for the Court's consideration. The Court will begin its analysis with JU's reliance on Florida Statute section 768.39, before turning to JU's contention that Allen's Complaint is due to be dismissed for failure to state a claim.

## DISCUSSION

### I. <u>Florida Statute section 768.39</u>

Because the legislature enacted section 768.39 after Allen filed this action and the statute could extinguish Allen's claims, the Court must determine as a threshold issue whether the statute can be applied to her claims.

### A. Legal Standard Applicable to Allen's Constitutional Challenge

"Courts ordinarily apply the law in effect at the time of its decision." <u>Tallahassee Mem Reg'l Med. Ctr v. Bowen</u>, 815 F.2d 1435, 1454 n.40 (11th Cir.

---

Court cannot determine whether Allen appropriately identified the constitutional challenge. Regardless, as discussed here the Court has satisfied the notice requirement.

   [2] Pursuant to 28 U.S.C. § 2403(b), if the constitutionality of a state statute is challenged in an action to which the state is not a party, the Court "shall certify such fact to the attorney general of the State" and permit the attorney general an opportunity to intervene.

1987). However, under Florida law, when a statute affects substantive rights, there is a presumption against its retroactive application. Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 424 (Fla. 1994). To rebut the presumption, the statute must satisfy a two-pronged test: first, there must be clear intent for the legislation to apply retroactively, and second, the retroactive application must be constitutionally permissible. Metro. Dade Cty. v. Chase Fed. Hous. Corp., 737 So. 2d 494, 499 (Fla. 1999).

Notably, the presumption against retroactive application does not apply when a statute is purely procedural or remedial. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1358 (Fla. 1994). Such statutes are not "truly retroactive" because they do not attach legal consequences to events that occurred before their enactment. Love v. State, 286 So. 3d 177, 187 (Fla. 2019) (citing Landgraf v. USI Film Prod., 511 U.S. 244, 275 (1994)). As a result, remedial and procedural statutes apply to cases regardless of whether the case was pending when the statute was enacted. Alamo Rent-A-Car, 632 So. 2d at 1358.

Here, JU contends that section 768.39 applies retroactively. First, JU argues that the statute's provisions are procedural and remedial, not substantive. See JU's Supp'l Brief at 6–12. And second, to the extent they are substantive, JU maintains that the presumption against retroactivity has been rebutted. Id. at 12–13. The Court disagrees.

## B. Framework of Section 768.39

In response to COVID-19 related lawsuits, the Florida legislature enacted section 768.39 to shield educational institutions from certain claims arising from the response to COVID-19. In subsection (1), the legislature set forth its purpose and findings:

> (1) The Legislature finds that during the COVID-19 public health emergency, educational institutions had little choice but to close or restrict access to their campuses in an effort to protect the health of their students, educators, staff, and communities. Despite these efforts, more than 120,000 cases of COVID-19 have been linked to colleges and universities nationwide, and the deaths of more than 100 college students have been attributed to the disease. The Legislature further finds that lawsuits against educational institutions based on their efforts to provide educational services while keeping students, faculty, staff, and communities safe during the COVID-19 public health emergency are without legal precedent. One court has even acknowledged that the "legal system is now feeling COVID-19's havoc with the current wave of class action lawsuits that seek tuition reimbursement related to forced online tutelage." Under these circumstances, the Legislature finds that there is an overpowering public necessity for, and no reasonable alternative to, providing educational institutions with liability protections against lawsuits seeking tuition or fee reimbursements or related damages resulting from the institutions changing the delivery of educational services, limiting access to facilities, or closing campuses during the COVID-19 public health emergency.

Fla. Stat. § 768.39(1). To accomplish this goal, subsection (3)(a) of the statute grants broad immunity to educational institutions who took "reasonably necessary" actions to diminish the spread of COVID-19 by complying with governmental guidance. § 768.39(3)(a). The subsection identifies reasonably necessary actions as including:

1. Shifting in-person instruction to online or remote instruction for any period of time;

2. Closing or modifying the provision of facilities, other than housing or dining facilities, on the campus of the educational institution; or

3. Pausing or modifying ancillary student activities and services available through the educational institution.

§ 768.39(3)(a)(1)–(3). To further shield educational institutions, the statute codifies certain affirmative defenses and makes them per se applicable. § 768.39(3)(b)–(c). Specifically, subsection (3)(b) codifies the common-law defense of impossibility, deeming "the provision of in-person or on-campus education and related services . . . impossible" during any period where institutions took reasonably necessary actions. And, in subsection (3)(c), the statute deems those same actions as being "justified." Finally, subsection (4) offers an additional layer of protection by prohibiting the use of a college's invoices, catalogs, or general publications as evidence of the existence of a contract for in-person education and access to on-campus facilities and services during COVID-19.[3] § 768.39(4).

### C. Retroactivity Analysis

#### 1) <u>Section 768.39 is a substantive statute</u>

Substantive statutes are those which attach new legal consequences to

---

[3] The statute also raises the burden of proof, requiring plaintiffs to prove their claim by "clear and convincing" evidence. § 768.39(7). At this stage of the proceedings, the ultimate burden of proof does not affect the Court's decision.

events that occurred before their enactment. Love, 286 So. 3d at 187; Metro. Dade, 737 So. 2d at 503. They do so by creating new substantive rights or imposing new burdens on existing rights. Arrow Air, 645 So. 3d at 424. In contrast, remedial statutes operate to further a remedy or confirm rights that already existed. See Adams v. Wright, 403 So. 2d 391, 394 (Fla. 1981) (stating that remedial statutes may correct existing wrongs, redress an existing grievance, or regulate for the public good). In other words, procedural statutes provide the means and methods for the application and enforcement of existing rights and duties. Maronda Homes, Inc. v. Lakeview Reserve Homeowners Ass'n, 127 So. 3d 1258, 1272 (Fla. 2013).

In support of the Motion, JU argues that three parts of section 769.39 are remedial, not substantive—subsection (3)(a), subsection (4), and subsections (3)(b) and (c). See JU's Supp'l Brief at 7–9. The Court will consider each in turn.

*Subsection (3)(a)*

JU argues that subsection (3)(a) of section 768.39—which grants educational institutions blanket immunity—is a remedial provision. See JU's Supp'l Brief at 7–9. Specifically, JU asserts that subsection (3)(a) is remedial because it provides a remedy for educational institutions to employ against lawsuits. Id. at 36. This argument is unavailing.

The right to statutory immunity is a substantive right. See Walker v.

LaBerge, Inc. v. Halligan, 344 So. 2d 239, 243 (Fla. 1977); Love, 286 So. 3d at 186. Thus, a statute that confers immunity is not a remedial statute, as JU contends, but rather it is a substantive statute. Metro. Dade, 737 So. 2d at 500–503 (finding a statute substantive because it conferred immunity for past actions); Johnson v. Conner, 754 F.3d 918, 920–21 (11th Cir. 2014) (stating that a statute was substantive because it extended immunity to jailers); Kruse v. Corizon, Inc., 2013 WL 3366040, at *17 (S.D. Ala. July 5, 2013) ("[I]t is difficult to imagine how a statute creating new immunity from suit could possibly be viewed as remedial and not substantive.").[4] Because subsection (3)(a) grants educational institutions the substantive right to statutory immunity, the Court finds that it is a substantive statute. See Fiore v. Univ. of Tampa, 568 F. Supp. 3d 350, 364-365 (S.D.N.Y. 2021) (finding the grant of immunity in subsection (3)(a) to be substantive).[5]

Next, the Court determines that subsection (3)(a) is also substantive

---

[4] Johnson and Kruse were decided under Alabama law, which largely tracks Florida law on the retroactive application of legislative measures. Indeed, in Alabama, "remedial statutes may have retroactive application, but substantive statutes may not be applied retroactively." Bd. of Sch. Comm'rs of Mobile Cty. v. Christopher, 97 So. 3d 163, 169 (Ala. Civ. App. 2012). "Remedial statutes are those relating to remedies or modes of procedure," Ex parte Burks, 487 So. 2d 905 (Ala. 1985), while "[s]ubstantive laws are those that create, enlarge, diminish, or destroy vested rights." Ins. Guar. Ass'n v. Mercy Med. Ass'n, 120 So. 3d 1063, 1068 (Ala. 2013).

[5] In citing Fiore, the Court recognizes that decisions of other district courts are not binding precedent. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects"). Nevertheless, in this Order the Court cites to Fiore and decisions of other fellow district court's where the reasoning in the decisions is consistent with the Court's analysis and also persuasive.

because it burdens Allen's existing rights. Under Florida law, a party has a substantive right in a cause of action that has accrued. Raphael v. Shecter, 18 So. 3d 1152, 1157 (Fla. 4th DCA 2009). Therefore, a statute that impairs or destroys an accrued cause of action is a substantive statute. Maronda Homes, 127 So. 3d at 1272; Am. Optical Corp. v. Spiewak, 73 So. 3d 120, 126–27 (Fla. 2011). Here, Allen's causes of action accrued before Florida enacted section 768.39. See infra pp. 13–15. Subsection (3)(a) eliminates her causes of action because it grants JU blanket immunity from each claim. Indeed, other courts analyzing this same provision have concluded that subsection (3)(a) attaches new consequences to pre-enactment actions. See Ferretti v. Nova Se. Univ., Inc., 586 F. Supp. 3d 1260, 1267 (S.D. Fla. 2022) (holding that subsection (3)(a) is substantive because it attaches new legal consequences to pre-enactment action); Fiore, 568 F. Supp. 3d at 364-365 (finding the grant of immunity in subsection (3)(a) to be substantive because it would abolish the plaintiff's cause of action). As a result, subsection (3)(a) is a substantive statute and presumably does not apply retroactively to the claims Allen raises in this action.

*Subsection (4)*

Pursuant to subsection (4), tuition, fees, invoices, catalogs, and general publications of an educational institution are not evidence of an express or implied contract. Fla. Stat. § 768.39(4). JU argues that subsection (4) is a

procedural provision that relates solely to the admission of evidence. See JU's Supp'l Brief at 10–11. This contention is unavailing

Whether a particular statutory provision is substantive or remedial depends on its effect, not its label. See State Farm Mut. Auto. Ins. v. Laforet, 658 So. 2d 55, 61 (Fla. 1995) (finding a statute substantive even though the legislature expressly stated that it was remedial); Arrow Air, 645 So. 2d at 425 (treating a statute with a remedial purpose as substantive because the clear effect was to affect substantive rights). If a remedial or procedural statute achieves its purpose by impairing substantive rights, it is substantive. See Smiley v. State, 966 So. 2d 330, 334 (Fla. 2007) ("[A] statute that achieves a remedial purpose by creating substantive new rights or imposing new legal burdens is treated as a substantive change in the law."). Looking to the effect of subsection (4), two courts have concluded that it is, in reality, a substantive provision. Fiore, 568 F. Supp. 3d at 364-365; Ferretti, 586 F. Supp. 3d at 1267–68. Both courts reasoned that subsection (4) substantively changes Florida law by requiring plaintiffs to prove the terms of a contract without documents that, prior to the statute, were acceptable sources of contractual obligations between a student and a school. Fiore, 568 F. Supp. 3d at 364-365; Ferretti, 586 F. Supp. 3d at 1267–68. The Court agrees with the reasoning in Fiore and Ferretti. Subsection (4) imposes a new legal burden on Allen by requiring her to prove the terms of a contract without the documents from which those very terms

derive. See Fiore, 568 F. Supp. 3d at 364-365; Ferretti, 586 F. Supp. 3d at 1267–68. See also Pembroke Lakes Mall Ltd. v. McGruder, 137 So. 3d 418 (Fla. 4th DCA 2014) (finding a newly enacted statute substantive because it changed the elements of a claim such that a plaintiff who could prevail pre-enactment could not prevail post-enactment). Though framed as a rule of procedure, subsection (4) is part and parcel of a statutory scheme to immunize educational institutions from liability. Subsection (4) accomplishes the goal by imposing an insurmountable burden on Allen's accrued cause of action by eliminating traditionally acceptable sources of evidence to establish her claim for relief. By eliminating the consideration of documents that govern the parties' contractual relationship, subsection (4) does more than just relate to the admission of evidence—it alters the parties' underlying obligations. As a result, subsection (4) is substantive, and it presumptively does not apply retroactively to Allen's claims.

*Subsections (3)(b) and (c)*

The Court need not address whether subsections (3)(b) and (c)—which codify certain common law defenses and make them per se applicable—are substantive. As explained below, those subsections deal with the viability of certain defenses that, even if applicable, would not warrant dismissal of this action at this stage of the proceedings. See infra pp. 31–33.

2) <u>JU has not rebutted the presumption against retroactive legislation</u>

Having found section 768.39 to be a substantive statute, the Court recognizes that pursuant to Florida law, a presumption arises that it does not apply retroactively. To rebut the presumption, JU must show (1) that the statute itself expresses the legislature's intent that it apply retroactively, and (2) that a retroactive application would be constitutionally permissible. <u>Metro. Dade</u>, 737 So. 2d at 499.

The retroactive application of a statute violates due process under both the United States and Florida Constitutions when it impairs or destroys a vested right. <u>Laforet</u>, 658 So. 2d at 61; <u>Maronda Homes</u>, 127 So. 3d at 1272. A party has a vested right in a cause of action that has accrued. <u>Maronda Homes</u>, 127 So. 3d at 1272 (noting that an accrued cause of action is a vested right); <u>R.A.M. of S. Fla., Inc. v. WCI Cmtys. Inc.</u>, 869 So. 2d 1210, 1219–20 (Fla. 2d DCA 2004); <u>Am. Optical Corp. v. Spiewak</u>, 73 So. 3d 120, 126–27 (Fla. 2011). Here, section 768.39—if applied retroactively—would abolish Allen's causes of action for breach of contract and unjust enrichment. The question, then, is whether those causes of action accrued before the statute was enacted.

Here, Allen's causes of action for breach of contract accrued before section 768.39 was enacted. This is so because a breach of contract claim accrues when the last element constituting the breach occurs. Fla. Stat. § 95.031(1); <u>Access Ins. Planners, Inc. v. Gee</u>, 175 So. 3d 921, 924 (Fla. 4th DCA

2015) (citing Fla. Stat. § 95.031(1)). As explained below, Allen plausibly alleges that an enforceable contract arose between Allen and JU during enrollment. See infra pp. 18–25. She also alleges that JU breached the contract when it moved classes online, closed the campus, and cancelled student activities. See Complaint ¶¶ 94, 128. JU took these actions in March 2020—more than a year before Florida enacted section 768.39. See Complaint ¶¶ 28–31. Therefore, Allen's breach of contract claims accrued before section 768.39 was enacted.

Allen's causes of action for unjust enrichment also accrued before section 768.39 was enacted. An unjust enrichment claim accrues when the defendant receives or retains the benefit conferred by the plaintiff. Flatirons Bank v. Alan W. Steinberg Ltd. P'ship, 233 So. 3d 1207, 1213 (Fla. 3d DCA 2017). Allen alleges that JU retained her tuition and mandatory fee payments and room and board fees despite the fact that it moved classes online, closed the campus, and cancelled student activities. See Complaint ¶¶ 94, 128. JU retained these benefits nearly a year before section 768.39 was enacted. See Complaint ¶¶ 94, 128. Therefore, as alleged, Allen's unjust enrichment claim accrued before section 768.39 was enacted.

Finally, Allen's FDUTPA claim accrued before section 768.39 was enacted. FDUTPA claims accrue when the last element constituting the cause of action occurs. Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp., 581 F. Supp. 2d 1215, 1223 (S.D. Fla. 2008). "[T]he three elements of a FDUTPA claim

are a deceptive act or unfair practice, causation, and actual damages." Id. (citing Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). A plaintiff suffers actual damages under FDUTPA when the plaintiff purchases something different from what he or she was led to believe was being purchased. Matthews v. Am. Honda Motor Co., No. 12-60630-CIV, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012). Therefore, FDUTPA claims accrue on the date the plaintiff purchased the product. Id.; S. Motor Co. of Dade Cnty. v. Doktorczyk, 957 So. 2d 1215, 1218 (Fla. 3d DCA 2007) (stating that the FDUTPA "cause of action accrued on the date of sale"); Wyse v. Gerard Roof Prod., LLC, No. 3:19-CV-121-TKW-EMT, 2019 WL 7347179, at *2 (N.D. Fla. Nov. 12, 2019). Here, Allen alleges she "purchased" in-class instruction and access to on-campus facilities when she paid tuition for the spring 2020 semester as a precondition to enrollment—more than a year before Florida Statute section 768.39 was enacted. See Complaint ¶¶ 2, 8–9. Therefore, Allen's FDUTPA claim accrued before section 768.39 was enacted.

Because Allen's claims all accrued before section 768.39 was enacted, she has a vested interest in each cause of action. Maronda Homes, 127 So. 3d at 1272. Section 768.39—if applied retroactively—would impair Allen's vested interest by imposing an insurmountable burden on her ability to prove her claims and recover damages. This impairment would violate Allen's rights under both the Florida and United States Constitutions. Thus, section 768.39

cannot operate retroactively. See Ferretti, 586 F. Supp. 3d at 1269–70 (holding that section 768.39 does not apply retroactively because it would destroy the plaintiff's vested rights in his accrued cause of action); Fiore, 568 F. Supp. 3d at 363-65 (same).

Allen's claims are not extinguished by section 768.39, thus, the Court now turns to the arguments raised in JU's Motion to Dismiss.

## II.   **Motion to Dismiss**[6]

In her Complaint, Allen asserts seven claims. In Counts I, III, and V, she alleges breach of contract claims. Specifically, Allen asserts that she contracted with JU when she paid tuition, and, in exchange, JU promised to provide access to in-person instruction, on-campus facilities, and on-campus services. ("Tuition Contract"). See Complaint ¶¶ 92–94. She also alleges that she contracted with JU when she paid mandatory fees, and, in exchange, JU promised to make available the facilities, services, and programs to which the fees related. ("Fees Contract"). Id. ¶¶ 125–28. And last, Allen contends that she contracted with JU when she paid fees related to room and board, and, in exchange, JU promised to provide on-campus housing and meals. ("Room and

---

[6] Allen brings this action on behalf of herself and a class of similarly situated students. See Complaint ¶ 38. Because the class has not been certified, the Court will address the merits of the Complaint only as to Allen's claims and not those of members of the proposed class. See, e.g., In re Brinker Data Incident Litig., No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *3 n.5 (M.D. Fla. Jan. 27, 2020) ("When considering a motion to dismiss filed in a putative class action before certification of a class, the Court considers only Plaintiff's individual allegations. . .") (quoting Parm v. Nat'l Bank of Cal., 242 F. Supp. 3d 1321, 1342 (N.D. Ga. 2017)).

Board Contract"). Id. ¶¶ 147–50. According to Allen, JU breached the Tuition Contract (Count I) and the Fees Contract (Count III) when it moved classes online, closed the campus, and cancelled student activities and breached the Room and Board Contract (Count V) when it required students to leave campus. Id. ¶¶ 94, 128, 150. As an alternative to each breach of contract claim, Allen alleges claims for unjust enrichment (Counts II, IV, and VI), and additionally, she asserts a violation of FDUTPA (Count VII). Id. ¶¶ 103, 134, 155, 167.

JU urges the Court to dismiss each cause of action for failure to state a claim pursuant to Rule 12(b)(6). See generally Motion. The Court will address JU's arguments in turn.

### A. Legal Standard for JU's Rule 12(b)(6) Challenge

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should give the defendant fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The plaintiff must provide more than mere labels and conclusions, and a formulaic recitation of the elements will not do. Twombly, 550 U.S. at 555 (citations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 679. Ultimately, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### B. Breach of Contract Claims

#### 1) The Tuition Contract

A breach of contract claim requires: (1) the existence of a valid contract, (2) a material breach, and (3) damages. Vega v. T-Mobile USA, Inc., 564 F.3d

1256, 1272 (11th Cir. 2009) (applying Florida law). To prove a valid contract exists, the plaintiff must specify the essential terms. Id.

In Count I, Allen alleges that JU, in exchange for her tuition payment, promised to provide access to in-person instruction and on-campus services. See Complaint ¶¶ 50–101. The contract's terms, according to Allen, are set forth in JU's publications and evidenced by the parties' conduct. Id. ¶ 53. Allen maintains that JU breached the promise of the Tuition Contract when it moved to remote instruction and closed the campus. Id. ¶ 94.

JU argues that Count I must be dismissed. JU's principal argument in support is that Allen failed to allege a valid contract because she did not identify a single contractual provision that obligates JU to provide in-person instruction. See Motion at 16–22. To the extent such a provision exists, JU argues that a disclaimer in its Academic Catalog renders its obligations illusory. Id. at 28. Finally, JU states that even if the Court finds a valid contract, Allen failed to identify a breach and failed to plead plausible damages. Id. at 25.

a. Allen has alleged that a valid contract exists

Florida law recognizes an implied-in-fact contract between a student and a private university. See, e.g., John B. Stetson Univ. v. Hunt, 88 Fla. 510, 517 (Fla. 1924) (stating that the relationship between a private school and a student is "solely contractual in character"). The contract's terms and

conditions can be informed, to some extent, by the university's publications. McCawley v. Universidad Carlos Albizu, Inc., 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). Notably, when the terms of a contract are ambiguous, the court may also glean the parties' intent from their conduct. Ferretti v. Nova Se. Univ., Inc., No. 20-CV-61431-RAR, _ F. Supp. 3d _, 2022 WL 1612687, at *3–4 (S.D. Fla. May 23, 2022). Ultimately, in determining the contractual terms between a student and a university, the Court must consider whether the parties, when entering the contract, reasonably contemplated the obligation. Sharick v. Se. Univ. of Health Scis., Inc., 780 So. 2d 136, 139 (Fla. 3d DCA 2000).

Here, Allen has plausibly alleged that she and JU reasonably contemplated JU's obligation to provide in-person instruction and campus access. Indeed, JU's publications are littered with references that support the expectation that classes would be conducted in person and campus would be accessible. For example, JU's Catalog requires a specific amount of "classroom instruction" per credit hour and permits longer class times to compensate for a "loss of contact hours." See JU Catalog (Doc. 11-2; Catalog) at p. 133. JU's handbook repeatedly touts its on-campus facilities and services, along with its location in Northeast Florida. See JU Handbook (Doc. 11-2; Handbook) at p. 753–64. Its registration portal lists classes not just by content description, but by physical location. See Complaint ¶ 85. Its webpages, brochures, and marketing materials reference campus amenities and campus services. Id. ¶¶

55–83. Its departmental handbooks require strict personal attendance in class. Id. ¶ 86. And its residential policy states that "[l]iving on campus is such an integral part of the Jacksonville University experience that [JU has] a three-year residency requirement." Id. ¶ 56.[7]

Beyond JU's publications, Allen's allegations regarding the parties' conduct suggest a shared understanding that JU would provide in-person instruction and campus access. According to Allen, in the months leading up to the pandemic, students attended class on campus and received in-person instruction. Id. ¶ 89. JU faculty provided documents with class meeting schedules and physical attendance requirements. Id. ¶ 90. JU also granted students access to the full panoply of on-campus facilities. Id. ¶ 91. Based on Allen's allegations regarding JU's publications and the parties' conduct, the Court finds it plausible that Allen and JU contemplated the provision of in-person instruction and campus access at the time of enrollment.

The Court's conclusion finds support in the growing body of case law where federal courts—applying Florida law—have generally refused to dismiss

---

[7] JU disputes these obligations, arguing that Allen failed to identify a specific provision in the publications that promises in-person instruction or campus access. See Motion at 16–22. However, "allegations that a university's publications describe 'face-to-face' classes as being 'in person,' 'on campus,' 'in class,' 'in the classroom,' 'in-class lectures,' and 'traditional face-to-face classroom instruction'" have been found to be sufficient to plead the existence of a contract for in-person instruction at the motion-to-dismiss stage. Ferretti, 2022 WL 1612687, at *4."[A] determination regarding whether the parties' 'legal, binding contract' included a promise to provide on-campus services in exchange for fees is more appropriate at the summary judgment stage." Univ. of S. Fla. Bd. Of Trustees v. Moore, 347 So. 3d 545, 549 (Fla. 2d DCA 2022).

nearly identical claims.[8] See Salerno v. Fla. S. Coll., 488 F. Supp. 3d 1211, 1217–18 (M.D. Fla. 2020) (denying motion to dismiss because the college's publications—which touted the college's on-campus resources and facilities—clearly implied that courses would be in person); Rosado v. Barry Univ. Inc., 499 F. Supp. 3d 1152, 1157 (S.D. Fla. 2020) ("Rosado's allegations that Barry accepted $773 more per credit for in-person classes from Rosado, and actually provided in-person education to Rosado until March 19, 2020, in the backdrop of numerous other documents referring to in-person classes and amenities, are sufficient to establish, at minimum, an implied contract."); Gibson v. Lynn Univ., Inc., 504 F. Supp. 3d 1335, 1339–42 (S.D. Fla. 2020) (denying motion to dismiss where the plaintiff cited portions of the university's publications and policies suggesting courses would be conducted in-person); Rhodes v. Embry-Riddle Aeronautical Univ., Inc., 513 F. Supp. 3d 1350, 1357–58 (M.D. Fla. 2021) (same); In Re: Univ. of Mia. Covid-19 Tuition and Fee Refund Litig., 524 F. Supp. 3d 1346, 1352–54 (S.D. Fla. 2021); Fiore, 568 F. Supp. 3d at 367–69.

---

[8] While most federal courts applying Florida law in similar cases have denied motions to dismiss, some courts have either granted or granted in part the motion. In the instances where the motions to dismiss have been granted in whole or in part, the facts were different in a significant respect. See Lafleur v. State University System of Florida, No. 8:20-CV-1665-KKM-AAS, 2021 WL 3727832, at *8 (M.D. Fla. Aug. 02, 2021), report and recommendation adopted, 2021 WL 3725243 (M.D. Fla. Aug. 23, 2021) ("Although the plaintiffs' breach of contract claim should be dismissed based on sovereign immunity, the claim otherwise is adequately pleaded to survive the alternative argument that the plaintiffs failed a [sic] state a claim for breach of contract."); Ferretti, 2022 WL 1612687, at *1 (explaining that this case is "unique" and critically different from the growing body of federal-court case law in Florida because the school specifically defined "face-to-face classes" as classes that may also include online instruction).

Recognizing this adverse case law, JU argues that those courts mistakenly departed from Florida law. See Motion at 16, 20. JU contends that contracts between students and universities historically have been limited to fundamental aspects of the relationship; that is, in exchange for tuition, the university need only provide "an educational experience designed to lead to a college degree." Id. This contention is unavailing, here.

In Orzechowitz v. Nova Southeastern University, the court held that an implied-in-fact contract between the university and student prohibited the university from discriminating against the student. No. 13-62217-CIV, 2014 WL 1329890, at *2–3 (S.D. Fla. Mar. 31, 2014). The court rejected the university's argument—similar to JU's—that its only obligation was to supply an education designed to lead to a degree. Id. at *3. Instead, the court explained, "the case law more broadly support[s] the proposition that a student handbook or publication can create contractual obligations on the part of the university that are not necessarily limited to the service of providing a college degree." Id. (citing Sirpal v. Univ. of Miami, 684 F. Supp. 2d 1349, 1359 (S.D. Fla. 2010)). Persuaded by Orzechowitz, the Court rejects JU's argument that its obligations were necessarily limited to the fundamental aspects of its relationship with Allen.

Finally, JU argues that even if the parties anticipated in-person education, a Reservation of Rights provision in its Academic Catalog prevented

the formation of any contract. <u>See</u> Motion at 24. The Reservation of Rights provision states:

> JU <u>intends</u> to adhere to the rules and regulations, course offerings, and financial charges as announced in this Catalog and in other publications. <u>The University, nevertheless, reserves the right to withdraw any subject or course</u>, to change the academic calendar, to change rules affecting the admission and retention of students or the granting of credit or degrees, or to alter its fees and other charges, whenever such charges are desirable or necessary.

<u>See</u> Motion at 23 (emphasis added). Notably, courts should not interpret a contract at the motion-to-dismiss stage unless it is unambiguous. <u>See</u> <u>BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins.</u>, 706 F. App'x 521, 524 (11th Cir. 2017); <u>Geter v. Galardi S Enters.</u>, 43 F. Supp. 3d 1322, 1328 (S.D. Fla. Aug. 29, 2014). Here, JU argues that two provisions in the Reservation of Rights unambiguously warrant dismissal. <u>See</u> Motion at 23–25.

First, JU points to the opening sentence—JU "<u>intends</u> to adhere to the rules and regulations, course offerings, and financial charges as announced in this Catalog and in other publications." <u>See</u> Motion at 23 (emphasis added). According to JU, this statement of intent renders its promises merely aspirational and illusory. <u>Id.</u> at 24. The Court disagrees. At this, the motion-to-dismiss stage of the proceedings, the Court is of the mind that JU's "intent to adhere" to the contractual terms is entirely consistent with its obligation to do the same. Indeed, one would expect that most contracting parties at the time of formation intend to adhere to their contractual obligations. JU would

have the Court insert limiting language into this provision—"JU <u>only</u> intends" or "JU <u>merely</u> intends." JU's interpretation would also render the next sentence in the Reservation of Rights meaningless, for if the promises JU made in its publications were merely aspirational, JU would not need to reserve its right to take actions that contravene those promises. Accordingly, the Court cannot say that the opening sentence unambiguously renders JU's obligations illusory.

JU also draws the Court's attention to part of the second sentence—"The University, nevertheless, reserves the right to withdraw any subject or course." <u>See</u> Motion at 23. According to JU, this provision unambiguously authorizes it to convert in-person classes to online classes. Again, the Court disagrees. JU's interpretation requires at least two inferences that go beyond the provision's plain language.[9] As a result, the provision is ambiguous, and the Court will forgo interpreting it at this stage.

      b. <u>Allen has alleged that JU breached the Tuition Contract</u>

Next, JU argues that Allen failed to allege that it breached the Tuition Contract. JU points to a "refund policy" in its Academic Catalog that sets forth

---

[9] First, JU argues that in-person and online classes are "two separate and distinct products." <u>See</u> Motion at 23. From there, JU reasons that when instruction is converted from an in-person class to an online class, the former "product" ceases to exist. <u>Id.</u> This action, according to JU, is specifically authorized by the language in the Reservation of Rights that "reserves the right to withdraw any subject or course." <u>Id.</u> at 23–24. Such a construction cannot be made at this stage of the proceedings in this case.

a percentage-based refund allowance for students who "officially withdraw or reduce [their] class load" within a certain timeframe:

- ◦ First week of classes - 100%
- ◦ Second week of classes - 75%
- ◦ Third week of classes - 50%
- ◦ Fourth week of classes - 25%
- ◦ After fourth week of classes - None

See Catalog at 131. JU argues that Allen has no contractual right to her tuition fees because the alleged breaches occurred after the fourth week of classes. See Motion at 27. However, as Allen points out, the refund policy appears to apply only to students who—unlike Allen—formally withdrew during the semester. See Response at 19–20. At best, the effect of the refund policy is ambiguous. Therefore, the Court will not interpret it to limit Allen's claims at this early stage.

### c.   Allen plausibly alleged damages

Finally, JU argues that Allen has not plausibly alleged damages for breach of the Tuition Contract. According to JU, Allen never alleged that JU charged her a different tuition rate than online students. See Motion at 11. But this omission does not defeat her claim. Indeed, Allen cites numerous JU statements that emphasize the importance and expectation of classroom experience and on-campus activity. See Complaint ¶¶ 56–82. On that basis, Allen says that she chose JU's on-campus program over an online program from a different institution. Id. ¶ 13, 92–94. Allen asserts that she did not

receive the value for which she bargained because JU transitioned to online instruction. Id. ¶¶ 98–99. As a result, she seeks to recover the difference in fair market value of the in-person, on-campus education she bargained for and the online instruction she received. Id. ¶ 101; Response at 21. These allegations set forth a plausible theory of damages.

JU also contends that Allen's theory of damages—the difference in fair market value between in-person instruction and online instruction—is impermissible. See Motion at 25–26. JU points out that Allen did not allege a price difference between JU's online classes and in-person classes. Id. at 25. Without a price difference, JU says that the Court can only determine the online and in-person classes' fair market value by analyzing the value of the instruction itself. Id. This determination, the argument goes, is equivalent to an incognizable "educational malpractice claim."[10] Id. n.25; Rhodes, 513 F. Supp. 3d at 1356 ("Educational malpractice claims are not cognizable under Florida law.").

JU's argument fails for two reasons. First, calculating market damages in this context does not necessarily violate the educational malpractice doctrine. See Rhodes, 513 F. Supp. 3d at 1357 ("[T]he essence of Plaintiff's claim is that he contracted for in-person classes and received online classes

---

[10] An educational malpractice claim arises when a plaintiff alleges that a school failed to properly educate its students. Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. 5th DCA 2004). Under such a claim, a school would have a duty to educate its students and would be liable in tort for failing to fulfill its duty. Id.

instead—a paradigmatic contract claim."); <u>Salerno</u>, 488 F. Supp. 3d at 1218 ("[T]he Court underscores that this case is not about the quality of the College's education . . . . This case is simply about an alleged promise to provide in-person learning that was allegedly breached."); <u>Gibson</u>, 504 F. Supp. 3d at 1342 ("[T]his is not a case about the quality of education Lynn provided to students . . . . Rather, Plaintiff's claim is based on Lynn's alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources."). Second, it is not yet clear that Allen's theory of damages actually requires the Court to subjectively determine the quality of the education provided by JU. Factual development could reveal that Allen's damages depend solely upon a quantitative calculation—for example, a cost comparison between the in-person degree program at JU and an online degree program at a comparable university. See <u>Bergeron v. Rochester Inst. of Tech.</u>, No. 20-cv-6283, 2020 WL 7486682, at *8 n.7 (W.D.N.Y. Dec. 18, 2020) (finding damages plausibly pled and noting that the plaintiffs stated they would prove fair market value by calling experts to testify about the relative costs of online programs versus in-person educational programs); <u>Durbeck v. Suffolk Univ.</u>, No. CV 20-10985-WGY, 2021 WL 2582621, at *6 (D. Mass. June 23, 2021) (denying motion to dismiss because it was not clear whether the plaintiff's damages theory required a subjective determination of educational quality, or a purely quantitative determination). Accordingly, Allen has plausibly pled her

entitlement to damages and a breach of the Tuition Contract as alleged in Count I.

## 2) The Fees Contract

In Count III, Allen alleges that JU, in exchange for mandatory fee payments, promised to make certain services, benefits, and programs available to students. Complaint ¶ 119. According to Allen, JU breached the contract when it closed the campus. Id. ¶ 128.

When a student pays fees that grant access to specific facilities or services, and that access is subsequently denied, a plausible breach of contract claim exists. See Fiore, 568 F. Supp. 3d at 367–69. Ferretti, 2022 WL 1612687, at *5 ("All that is necessary at the motion-to-dismiss stage is that "Plaintiff cite[ ] to portions of [Defendant's] publications and policies that suggest ... students would have access to campus facilities and activities." (citing Gibson, 504 F. Supp. 3d at 1339)). By contrast, when a student pays fees that support unspecified services but do not grant access, denial of access does not give rise to a breach of contract claim. See Fiore, 568 F. Supp. 3d at 374–75.

Here, Allen alleges that she paid fees related to specific services and facilities on campus. See Complaint ¶ 21 (identifying, among other things, a Book Bundle Fee, Student Wellness Fee, and Residence Hall Fee). She states that her fee payments were intended to cover the "services, benefits, access, and programs that they described." Id. ¶ 124–25. Allen further alleges that JU

failed to provide her access to these services and facilities, including on-campus printing facilities, recreational facilities, campus-based information technology resources, and the library. Id. ¶ 126. Because Allen identified specific services and facilities to which she lost access, she has plausibly stated a claim for breach of the Fees Contract.

### 3) The Room and Board Contract

In Count V, Allen alleges that JU promised to provide on-campus housing and meals in exchange for certain fee payments. See Complaint ¶¶ 147–49. Allen states that JU required students to leave the residence halls on March 17, 2020, when it sent correspondence stating that it "strongly encouraged students to return home" for the semester and that it would be relocating any remaining students to a residence hall on the campus's south end. Id. ¶ 150; see Motion Ex. II(A). According to Allen, JU breached the Room and Board Contract because its actions constituted a constructive eviction. See id.

To establish a claim for constructive eviction under Florida law, Allen must allege that JU intentionally interfered with her beneficial enjoyment of the premises by taking some wrongful action. Hankins v. Smith, 138 So. 494, 495–96 (Fla. 1931). The wrongful act must render the premises unsafe, unfit, or unsuitable for the purposes for which it was leased. Kaplan v. McCabe, 532 So. 2d 1354, 1356 (Fla. 5th DCA 1988).

Here, the facts Allen alleges in her Complaint contradict the claim that she was constructively evicted. Based on her own allegations, JU did not "require" students to leave campus in its March 17 correspondence. To the contrary, it "strongly encouraged" students to return home, but gave them the option to remain on campus if they wished. See Ex. II(A). Even if JU ordered students to leave the campus on March 17, Allen alleges that she had already left campus eight-days prior—on March 9, 2020. Id. ¶¶ 24, 30. Allen does not allege that she attempted to return to campus; nor does she say that JU prevented her from doing so. Having failed to show that JU's actions caused her to leave her residence, Allen has not plausibly alleged that JU wrongfully interfered with her use and enjoyment of the premises.[11] Thus, she fails to state a claim for breach of the Room and Board Contract, and Count V will be dismissed.

### 4) JU's affirmative defenses do not warrant dismissal

Because the Court determines that Counts I and III state plausible claims to relief, the Court next considers JU's contention that its affirmative defenses warrant dismissal. See Motion at 8–9. Generally, the court will not dismiss a claim because affirmative defenses exist. Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984). Nevertheless, the court

---

[11] Allen also failed to allege that JU rendered the premises unsafe, unfit, or unsuitable for the purposes of which it was leased. Kaplan, 532 So. 2d at 1356. Quite the opposite, JU's actions appear to have been aimed at making on-campus housing safer in light of the pandemic.

will dismiss a claim when an affirmative defense appears on the face of the complaint. Id. JU argues that multiple affirmative defenses appear on the face of Allen's Complaint. The Court will address each in turn.

### a.  The impossibility and frustration defenses

First, JU argues that the impossibility and frustration defenses excuse its non-performance. See Motion at 8–9. Under both defenses, "a party is discharged from performing a contractual obligation which is impossible to perform" so long as "the party neither assumed the risk of impossibility nor could have acted to prevent the event rendering the performance impossible." Marathon Sunsets, Inc. v. Coldiron, 189 So. 3d 235, 236 (Fla. 3d DCA 2016).

Here, JU argues that COVID-19 rendered its performance impossible. See Motion at 8. However, the existence of COVID-19 does not conclusively establish that JU's performance of its contractual obligations was impossible. See Rosado, 499 F. Supp. 3d at 1158–59 ("Although the existence of COVID-19 is generally known and cannot reasonably be questioned, that does not conclusively establish the defense of impossibility."). JU also argues that it was impossible to provide Allen in-person instruction because she voluntarily left campus and did not return. Id. at 9. However, it is not apparent from the Complaint why Allen left or whether she tried to return. Nor is it apparent whether Allen would have returned had JU offered in-person instruction or opened its campus. Given these uncertainties, JU's affirmative defense does

not warrant dismissal.

Assuming the affirmative defense was facially apparent, dismissal is still premature because the Court would have to determine which party bore the risk of the impossibility of performance or could have acted to prevent it. <u>Rosado</u>, 499 F. Supp. 3d at 1159; <u>In Re Cinemex USA Real Estate Holdings, Inc.</u>, 627 B.R. 693, 699 (Bankr. S.D. Fla. 2021) (finding the impossibility and frustration defenses irrelevant where the contract itself allocated the risk). Under the facts before the Court—where significant questions remain as to the contract's applicability, scope, and effect—further discovery is necessary. <u>See</u> <u>Rosado</u>, 499 F. Supp. 3d at 1159 (rejecting the impossibility defense at the motion-to-dismiss stage because it was not clear which party bore the risk of the pandemic); <u>Gibson</u>, 504 F. Supp. 3d at 1343 (same). Thus, the impossibility and frustration defenses do not warrant dismissal.

### b.  <u>The illegality defense</u>

Next, JU argues that its performance was excused because it would have violated local law if it had continued to provide in-person instruction and unrestricted access to campus activities and facilities. <u>See</u> Motion at 9. Specifically, JU points to an Executive Order issued by Jacksonville Mayor Lenny Curry on April 1, 2020. <u>See</u> Emergency Executive Order Number 2020-5 (Doc. 11-1; Ex. I(K)). The Order required all non-essential businesses to close. <u>Id.</u> With respect to private colleges such as JU, the Order permitted continued

operations, "but only to the extent needed to facilitate online or distance learning." Id. Based on this Executive Order, JU argues that it could not have offered in-person instruction or access to its facilities without violating local law. Id.

The problem with JU's argument is that the Executive Order it relies upon was issued on April 1, 2020—more than 20 days after JU moved instruction online. See Complaint ¶ 28. As a result, it is not facially apparent from the Complaint that JU's performance, at all relevant times, would have violated local law. Nor is it apparent—given "the overlapping and sometimes contradictory state and local regulations"—that JU's performance would have violated public policy. Rosado, 499 F. Supp. 3d at 1158–59. Accordingly, the illegality defense does not warrant dismissal.

### c.  The waiver defense

Finally, JU argues that Allen acquiesced to the contract's alteration by continuing to perform and failing to oppose the change in instruction. See Motion at 28. Under Florida law, a party waives its rights under a contract when it takes action that would lead a reasonable person to believe that it relinquished the right. Sacred Heart Health Sys. v. Humana Mil. Healthcare Inc., 601 F.3d 1159, 1181 (11th Cir. 2010); Arbogast v. Bryan, 393 So. 2d 606, 608 (Fla. 4th DCA 1981). A party relinquishes its rights and acquiesces to a contract's alteration when he or she fails to declare a breach and continues to

perform. <u>Sacred Heart</u>, 601 F.3d at 1181 (citing <u>Acosta v. Dist. Bd. of Trs. of Miami–Dade Cmty. Coll.</u>, 905 So. 2d 226, 229 (Fla. 3d DCA 2005)). However, to waive the right, the party must know it existed and know all the material facts. <u>See</u> <u>Winans v. Weber</u>, 979 So. 2d 269, 274 (Fla. 2d DCA 2007) ("The element of knowledge of the right is critical.").

Here, waiver is not apparent from the face of Allen's Complaint. It is not clear what actions Allen took when she learned JU was transitioning to remote learning, nor is it apparent that Allen knew she could reject the contract at any point during the spring semester. Moreover, had Allen rejected the contract and withdrawn, she would have been ineligible for a refund and received a (likely failing) grade in the course. <u>See</u> Complaint Ex. II(B) at 130–31, 134. Without a developed record, the Court will not conclude that Allen's failure to withdraw during a pandemic—forfeiting her tuition and sinking her grade point average—is sufficient to establish her acquiescence to new contractual terms. <u>See</u> <u>Gibson</u>, 504 F. Supp. 3d at 1343 (refusing to conclude that the plaintiff relinquished his contractual rights by not withdrawing); <u>Rosado</u>, 499 F. Supp. 3d at 1159 (same).

For these reasons, none of JU's affirmative defenses warrant dismissal of the breach of contract claims in Counts I and III of Allen's Complaint.

### C. Unjust Enrichment Claims

As an alternative to each breach of contract claim, Allen brings a claim

for unjust enrichment. See Complaint ¶¶ 103, 134, 155.

Initially, JU argues that an unjust enrichment claim cannot lie where a valid contract exists. See Motion at 29. But Florida law and Rule 8(d)(3) of the Federal Rules of Civil Procedure plainly allow parties to plead unjust enrichment as an alternative to a breach of contract claim. See, e.g., Rea v. It Works! Glob., Inc., No. 8:19-cv-599-T-30JSS, 2019 WL 5722479, at *2 (M.D. Fla. June 21, 2019); Real Est. Value Co. v. Carnival Corp., 92 So. 3d 255, 263 n.2 (Fla. 3d DCA 2012); Salerno, 488 F. Supp. 3d at 1218; Rosado, 499 F. Supp. 3d at 1159–60; Gibson, 504 F. Supp. 3d at 1343–44; Rhodes, 513 F. Supp. 3d at 1359; Univ. of Mia., 524 F. Supp. 3d at 1354.[12]

JU also argues that Allen has failed to state plausible claims for unjust enrichment. See Motion at 30. Under Florida law, unjust enrichment claims require: (1) the plaintiff to confer a benefit on the defendant; (2) the defendant to know of the benefit and voluntarily accept and retain it; and (3) circumstances that make it inequitable for the defendant to retain the benefit. Rhodes, 513 F. Supp. 3d at 1359. JU challenges Allen's satisfaction of the third

---

[12] JU cites one case—Whitesell Corp. v. Electrolux Home Prod., Inc., No. CV 1:03-050, 2014 WL 4674847, at *1 (S.D. Ga. Sept. 18, 2014)—to support its argument that Allen cannot allege unjust enrichment as an alternative to breach of contract. Whitesell is simply inapplicable. There, the Court did not allow the plaintiff to amend its complaint—7 years into the litigation—to add a claim for unjust enrichment because it had already determined on summary judgment that a partially valid contract existed. Id.; Whitesell, No. CV 1:03-050 (Doc. 212 at 23–24). Here, the Court has made no such determination; rather, it has merely found that Allen pled the elements for breach of contract. In this posture, alternative pleading is permitted.

element, arguing that Allen failed to allege that it would be unjust for JU to retain her tuition and mandatory fee payments. <u>See</u> Motion at 30–31. The Court disagrees.

Allen asserts that she paid JU for a product—in-person education and campus access. <u>See</u> Complaint ¶ 109. Although JU did not provide the full product, Allen alleges that it retained the full payment. <u>Id.</u> ¶¶ 107–110; 138–40; 159–61. Allen also asserts that JU's shift to remote learning saved it significant expenses. <u>Id.</u> ¶ 111. At this stage, Allen's allegations are sufficient to plead unjust enrichment as it relates to the payments for tuition and mandatory fees in Counts II and IV.

On the other hand, Allen has failed to state a claim for unjust enrichment as it relates to the room and board fees in Count VI. Allen argues that JU was unjustly enriched because it refused to return a portion of her fees after failing to provide her meals and housing. <u>See</u> Complaint ¶¶ 159–60. But as explained above, the allegations in the Complaint show that JU permitted students to remain on campus and that Allen abandoned the residence before JU acted. Thus, Allen has failed to plead facts from which the Court can reasonably infer that it would be inequitable for JU to retain her room and board fees. <u>Twombly</u>, 550 U.S. at 556. Count VI, therefore, is due to be dismissed.

### D. FDUTPA Claim

To prevail on a FDUTPA claim, the plaintiff must show: 1) a deceptive

act or unfair practice; 2) causation; and 3) actual damages. Blair v. Wachovia Mortg. Corp., No. 5:11-cv-566-OC-37TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012). An act is deceptive if it "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." State v. Beach Blvd. Auto., Inc., 139 So. 3d 380, 387 (Fla. 1st DCA 2014).

In Count VII, Allen alleges that JU violated FDUTPA when it made deceptive, false, and misleading statements designed to make students believe they would receive in-person instruction. See Complaint ¶¶ 167–179. JU contends that the claim should be dismissed. First, JU argues that Allen failed to plead her FDUTPA claim with the particularity required by Rule 9(b), Federal Rule(s) of Civil Procedure. See Motion at 31–33. Second, JU argues that Allen's FDUTPA claim is impermissibly based on the same underlying conduct as her breach of contract claim. Id. at 33–34. Neither ground warrants dismissal.

### 1) Allen has satisfied Rule 9(b)

Courts in this district are split as to whether FDUTPA claims are subject to Rule 9(b). See, e.g., Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC, No. 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *3 (M.D. Fla. Sept. 4, 2020). However, this Court has followed the line of cases that applies Rule 9(b) to FDUTPA claims sounding in fraud. See, e.g., D.H.G. Properties, LLC v. Ginn Companies, LLC, No. 3:09-CV-735-MMH-JRK, 2010 WL 5584464, at *5 (M.D.

Fla. Sept. 28, 2010) (Howard, J.). Here, Allen's FDUTPA claim sounds in fraud because it is premised on "false, misleading, [and] deceptive" representations by JU allegedly designed to mislead students into believing that they would receive in-class instruction and a campus experience for the entire semester. See Complaint ¶¶ 176–79. Because Allen's claim sounds in fraud, Rule 9(b)'s heightened pleading standard applies.

Rule 9(b) requires a plaintiff to state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Allen can satisfy this heightened standard by alleging: (1) the precise statements made; (2) the time and place of each statement and the person responsible for making them; (3) the manner in which the statements misled the plaintiff; and (4) the benefit obtained by the defendants as a consequence of the fraud. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1371 (11th Cir. 1997).

The allegations in Allen's Complaint satisfy Rule 9(b). Allen identifies specific representations by JU that, according to her, were designed to make potential students believe they would receive in-person instruction and a unique campus experience for the entire spring 2020 semester. See Complaint ¶¶ 64 (identifying statements on JU's website that tout its beautiful campus as a reason to choose JU), ¶¶ 65–70 (identifying statements on JU's website describing JU's campus, facilities, and location), ¶ 70 (identifying statements that explain the importance of campus life to the experience at JU). She also

states that these statements misled her into believing that she would receive in-person instruction and access to campus for the full semester. Id. ¶¶ 174, 179. These allegations give JU notice of the precise conduct underlying Allen's FDUTPA claim. Accordingly, they satisfy Rule 9(b).

2) Allen's FDUTPA claim is not based on a breach of contract

A breach of contract does not support a FDUTPA claim. See, e.g., Rebman v. Follett Higher Educ. Grp., 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008). Instead, a plaintiff must show that the acts underlying the breach are—standing alone—unfair or deceptive. Id. In other words, "a FDUTPA claim must be premised on the act causing a breach of an agreement as opposed to the breach of the agreement itself." Fong Kai Bus. Grp. v. Shade Saver, Inc., No. 5:18-cv-540-OC-30PRL, 2019 WL 12304385, at *6 (M.D. Fla. Apr. 9, 2019); Pinnock v. Wal-Mart Stores, Inc., No. 6:09-cv143-MSS-GRJ, 2009 WL 10670000, at *5 (M.D. Fla. Aug. 10, 2009) (recognizing that a plaintiff may pursue a FDUTPA claim so long as the acts giving rise to the breach of contract also constitute an unfair or deceptive trade practice).

Here, although a closer call, Allen frames her FDUTPA claim as being premised on JU's underlying actions—not its contractual breach. Allen alleges that JU made representations designed to mislead potential students into believing that they would receive in-person instruction and a unique campus experience during the 2020 semester. See Response at 21. At this, the motion

to dismiss stage, Allen has sufficiently pled a FDUTPA claim premised on JU's underlying conduct. As such, this claim may proceed.

## CONCLUSION

In sum, Allen has plausibly alleged that JU breached the Tuition Contract (Count I) and the Fees Contract (Count III) when it moved classes online, closed the campus, and cancelled student activities. Likewise, Allen has plausibly alleged that JU was unjustly enriched when it retained both her tuition payments (Count II) and fee payments (Count IV). Allen has also alleged a plausible FDUTPA claim (Count VII) based on misrepresentations JU allegedly made to mislead potential students into believing that they would receive in-person instruction and a unique campus experience. Florida Statute section 768.39 does not immunize JU from these claims because the statute, if applied retroactively, would violate Allen's rights under both the Florida and United States Constitutions.

Allen's claims in Counts V and VI, on the other hand, are due to be dismissed. Allen has failed to state a claim for breach of the Room and Board Contract (Count V) or a claim for unjust enrichment based on JU's retention of the Room and Board Fees (Count VI). With respect to both Counts, Allen's allegations show that JU permitted students to remain on campus and that Allen left the residence before JU acted. As a result, Counts V and VI will be dismissed.

Accordingly, it is **ORDERED:**

1.  Defendant Jacksonville University's Motion to Dismiss Plaintiff's Corrected Class Action Complaint (Doc. 11) is **GRANTED in part and DENIED in part.**

    a.  The Motion is **GRANTED** to the extent that JU seeks dismissal of Counts V (Breach of Room and Board Contract) and VI (Unjust Enrichment for room and board fees).

    b.  Otherwise, the Motion is **DENIED**.

2.  The Clerk of Court is directed to lift the stay and administratively re-open the case.

3.  The parties must confer and complete their case management obligations as required by Local Rule 3.02(a), Local Rules, United States District Court, Middle District of Florida, no later than **January 31, 2023**.

**DONE** and **ORDERED** in Jacksonville, Florida this 14th day of December, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

ww
Copies to:
Counsel of Record